THOMAS JORDAN, Plaintiff-Appellee *v.* CIVIL SERVICE COMMISSION OF THE CITY OF CHICAGO, Defendant-Appellant.

(No. 53944;

First District—March 15, 1972.

Raymond F. Simon, Corporation Counsel, of Chicago, (Marvin E. Aspen and Edmund Hatfield, Assistant Corporation Counsel, of counsel,) for appellant.

Bellows, Bellows & Magidson, of Chicago, for appellee.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant, the Civil Service Commission of the City of Chicago, appeals from an administrative review proceeding in which the Circuit

Court of Cook County set aside the discharge of plaintiff from his employment as a license investigator for the City of Chicago.

On appeal defendant contends that the court erred in setting aside plaintiff's dismissal as (1) the trial court failed to review two findings of the Civil Service Commission which were in themselves sufficient to support the discharge of plaintiff; (2) a licensed private detective is required to answer questions propounded to him by the Illinois Crime Investigating Commission or its Executive Director; and (3) the finding of the Civil Service Commission that plaintiff was guilty of a conflict of interest is supported by the manifest weight of the evidence. The facts are as follows:

Plaintiff, Thomas Jordan was employed as a supervisory license investigator in the office of the City Collector of the City of Chicago for approximately 16 years. His duties were to supervise 6 or 7 license investigators who go from door to door checking business licenses and to check the districts himself from time to time. Plaintiff's working hours were from 8:30 A.M. to 4:30 P.M. Plaintiff was required to spend these working hours on the office premises throughout the week, except that on Tuesdays and Fridays, which were court days on which the license inspectors came in for cases coming up in court, plaintiff was supposed to be in at one o'clock to check the men in and to check their work. On occasion, plaintiff was also expected to work in the evening, as some of the places to be inspected did not open until after 5:00 P.M.

Plaintiff testified before the Civil Service Commission that he was the founder of Jordan Service, Inc., a licensed private detective agency and guard service with offices in downtown Chicago. He testified that he established the firm as a proprietorship in 1960 to occupy his retired father's time and that the firm was subsequently incorporated in late 1963 or early 1964. Plaintiff testified that his sister Josephine Jordan owned 100 per cent of the corporation stock. He also testified that the daily operations of the firm were handled by a chief investigator and a clerical staff, and that since the incorporation of the firm, plaintiff had not actively managed the firm, but had merely been a salaried employee, without assigned hours and whose service was primarily advisory.

The plaintiff's employment with, or operation of, the private detective agency had been a subject of some concern to the City Collector, William Prendergast for several years. In April 1962, Mr. Prendergast suspended plaintiff and told him that he was to disassociate himself from the Jordan Service Company. On May 27, 1962, Jordan delivered a letter to Mr. Prendergast admitting his ownership of Jordan Service Company, but pointed out that the bulk of the firm's work was "* * * uniformed guard (watchmen) work and is almost exclusively evening and night

work." Jordan further stated that "[i]n the future, as in the past, I will not allow any agency business to interfere or conflict with my assigned working hours as prescribed by the City Collector's Office." Although the letter contained no promise to totally disassociate himself financially, or otherwise, from Jordan Service Company, Mr. Prendergast testified that he reinstated plaintiff as a result of this letter.

In November, 1963, Mr. Prendergast again suspended Jordan as a result of his failure to disassociate himself from the Jordan Service Company. Jordan, who had subsequently been granted a six month leave of absence, was told that he could not return until he had severed all connections "* * * both financially and work-wise, with the Jordan Service Company." On November 6, 1964, Jordan delivered to Prendergast a letter from Harry Lockhard, the President of Jordan Service Company, which explained that Jordan was "* * * no longer conducting investigations for Jordan Service * * and it is no longer necessary for Mr. Jordan to be active in the operation of the agency * * *". Plaintiff was again reinstated.

The events which gave rise to the proceedings in the instant case began in April 1967 when plaintiff was subpoened by Charles Siragusa, Executive Director of the Illinois Crime Investigating Commission. Jordan was advised by his attorney that the subpoena was invalid and that in no event could he (Jordan) answer any questions concerning clientele of the Jordan Service Company. Nevertheless, Jordan telephoned Mr. Siragusa and informed him that if the subpoena were discharged, both he and Lockhard, the President of Jordan Service Company, would appear voluntarily.

When Lockhard and Jordan appeared at Mr. Siragusa's office, they were informed that a witness in a pending prosecution in the Circuit Court had been advised that Lockhard was attempting to obtain the witnesses' automobile license plate number. Siragusa then asked for the name of Jordan Service's client. Jordan explained to Siragusa that he and Lockhard were absolutely prohibited by the Detectives and Investigators' Act from disclosing to him or to anyone else, the names of Jordan Service's clients, unless required by law to do so. Jordan explained that his attorney had given him this advice. Jordan did answer all of Siragusa's other questions, however, refusing to answer only those concerning investigations which had been conducted by Jordan Service.

Siragusa reported plaintiff's refusal to answer certain questions to Commissioner McInerney of the Department of Investigation of the City of Chicago, who assured him that the City Collector would be informed. The City Collector was also informed that Jordan had been present at the Jordan Service premises on April 3, 1967, when an in-

vestigator for the Crime Commission served a subpoena to appear before Siragusa.

On April 14, 1967, City Collector Prendergast received an "anonymous telephone call" and as a result of the call, phoned Jordan Service Company at approximately 2:30 P.M. and asked for Jordan. Jordan answered and was asked "[w]hat are you doing in the office when you are supposed to be working for the City Collector?" Jordan replied that he had gone there to keep a luncheon engagement and although license supervisors were ordinarily supposed to take their lunch hours prior to 1:00 P.M. on Fridays, when they had court appearances to make, City Collector Prendergast testified that he knew of no court appearances which Jordan was required to make on the day in question, and no policy reasons why Jordan could not have taken his lunch hour when he saw fit.

On June 8, 1967, the City Collector filed charges against Jordan with the Civil Service Commission of Chicago. A hearing was held before the full Commission on July 19, 1967, and on September 13, 1967, the Civil Service Commission found that:

"From April 1, 1967 through April 20, 1967, the said Thomas Jordan was guilty of 'Conduct Unbecoming An Employee of the City of Chicago', in that the said Thomas Jordan did conduct himself in such a way as to be detrimental to the best interests of the City of Chicago. On April 3, 1967 and on April 14, 1967, the said Thomas Jordan was guilty of 'Being Absent Without Permission', in that upon the dates aforesaid the said Thomas Jordan was present at 30 North La Salle Street, without permission of his department head.

In April of 1962 and on December 4, 1963, the said Thomas Jordan was guilty of 'Disobedience of Orders', in that the said Thomas Jordan was ordered to disassociate himself both financially and work-wise with the Jordan Service Company, and he has failed to do so.

In April of 1967, the said Thomas Jordan was guilty of 'Conflict of Interest' in that on the date aforesaid the said Thomas Jordan had an interest in 'The Jordan Service Company', a detective agency and guard service."

The Commission ordered Thomas Jordan's discharge from his position as License Investigator II in the City Collector's office and from the service of the City of Chicago.

On October 17, 1967, Jordan filed an Administrative Review proceeding in the Circuit Court of Cook County. Argument was heard thereon and on January 31, 1969, the trial court found that plaintiff had been improperly discharged by the Civil Service Commission and ordered his reinstatement. It is from this order that defendant appeals.

Defendant's initial contention on appeal is that in setting aside the

decision of the Civil Service Commission, the trial court failed to even review two findings of the Commission which were in themselves sufficient to support the discharge of plaintiff by the manifest weight of the evidence. Defendant concedes that the trial court expressly found that plaintiff's interest in the Jordan Service Company did not amount to a conflict of interest and that the court ruled that plaintiff's refusal to answer all of Siragusa's questions was not conduct detrimental to the best interest of the City of Chicago. Defendant contends, however, that the court ignored the findings that plaintiff had disobeyed orders to disassociate himself from the Jordan Service Company, and that plaintiff had been absent without permission of his department head and that these findings supported the decision of the Civil Service Commission to discharge plaintiff.

Examination of the record, however, reveals that all findings of the Civil Service Commission were explicitly and thoroughly considered by the trial court in reaching its decision to set aside plaintiff's dismissal.

The trial judge announced during the administrative review proceedings that he had read all of the charges and the entire transcript of the proceedings before the Civil Service Commission as well as the briefs of the parties filed before him. The trial court expressly noted his consideration of three of the four commission findings of plaintiff's dereliction when he stated "[t]he only thing I am concerned with is, was there a conflict of interest here or a conflict on [*sic*] unbecoming a City employee, or did he disobey orders from the superior, either immediate or above him?" The record also indicates that the fourth finding of the Commission that Jordan had been absent without permission on April 3, 1967, and April 14, 1967, was also expressly considered by the trial court who replied to counsel for defendant's discussion of plaintiff's absence "\* \* \* without permission on those two days \* \* \*", by stating "[c]ounsel, that doesn't make an impression on me where a man has worked on the type of a job that he is working on and doing the things that he did that he would have to go out and investigate." Appellant's contention that the trial court failed to even notice and to review two findings of the Civil Service Commission is without foundation.

■■ Defendant further contends that these two findings, disobedience of orders and absence without permission, were in themselves sufficient to support the discharge of plaintiff. Defendant maintains that the Civil Service Commission heard the witnesses and found that plaintiff had disobeyed orders and had been absent without permission and that these findings are binding upon the trial court. While it is well settled that findings of fact by an administrative agency are *prima facie* true and correct (Ill. Rev. Stat. 1969, ch. 110, par. 274) and that courts are not

authorized to reweigh the evidence or to make an independent determination of facts (*Parker v. The Department of Registration and Education*, 5 Ill.2d 288, 125 N.E.2d 494), a reviewing court is still not relieved of the important duty to examine evidence in an impartial manner and to set aside findings unsupported in fact. (*Oakdale Community Consolidated School District No. 1 v. County of School Trustees of Randolph County*, 12 Ill.2d 190, 195, 145 N.E.2d 736, 738; *Wheeler v. County Board of School Trustees of Whiteside County*, 62 Ill.App.2d 467, 477, 210 N.E.2d 609, 613-14.) The fact that an agency heard witnesses testify does not permit the blind approval of these findings by a court of review. (*Drezner v. Civil Service Commission*, 398 Ill. 219, 75 N.E.2d 303; *Gasparas v. Leack*, 93 Ill.App.2d 99, 235 N.E.2d 359.) Rather, findings of administrative agencies must be supported by substantial evidence, (*Gibbs v. Orlandi*, 27 Ill.2d 368, 371, 189 N.E.2d 333, 235), and where it is found that the agency order is without substantial foundation in the evidence, it is the duty of a court of review to set it aside. *Illinois Central R.R. v. Illinois Commerce Commission*, 395 Ill. 303, 313, 70 N.E.2d 64, 69.

■■ In the instant case, Mr. Prendergast testified that the suspensions of Jordan were accompanied by orders that he totally disassociate himself from Jordan Service Company. Jordan testified that Prendergast did not tell him to totally divorce himself from the Company, but rather "* * * the gist of it was that he did not want me to be involved in any investigative work." If such conflicting testimony were the only evidence on the point, the trial court might well have had no factual basis upon which to reverse the finding of the Civil Service Commission that Jordan had disobeyed the orders of his superior. However, an isolated piece of testimony which, standing alone, could constitute substantial evidence, does not constitute substantial evidence if it is explained or discredited by other evidence. (*Fisher Body Division, General Motors Corporation v. Industrial Commission*, 20 Ill.2d 538, 543, 170 N.E.2d 108, 111; *Corn Products Refining Company v. Industrial Commission*, 6 Ill.2d 439, 443, 128 N.E.2d 919, 922.) In the instant case, Jordan's testimony was corroborated, and the testimony of Prendergast directly contradicted by the additional testimony of Prendergast himself.

After his suspension in April, 1962, Jordan sent Prendergast a letter stating that he was the sole owner of the Jordan Service Company and promising that he would not allow any agency business to interfere with his working hours in the City Collector's office. Jordan at no time indicated that he was severing himself financially or workwise from the Jordan Service Company. Prendergast admitted that it was as a result of this letter that he reinstated Jordan.

Again after he was suspended by Prendergast in November, 1963, Jordan sent Prendergast a letter stating that he was no longer conducting investigations for the Jordan Service Company, and was no longer an active participant in the operations of the Company. Prendergast admitted he did not interpret this letter as indicating that Jordan would disassociate himself financially and workwise from Jordan Service, yet Prendergast once against reinstated Jordan as a result of this letter.

■■ Prendergast's claim that he ordered Jordan to totally divest himself financially and workwise from the Jordan Service Company was discredited by both Jordan's testimony and Prendergast's own repeated reinstatements of Jordan without a premise of divestiture from him and with every indication that on the contrary Jordan was not divesting himself of ownership. Our examination of the record reveals that the trial court properly found the finding of the Civil Service Commission that Jordan disobeyed orders to disassociate himself financially and workwise from the Jordan Service Company to be without substantial support in the evidence.

■■ We also find that the charge that Jordan's presence at the Jordan Service Company on April 3, 1967, and April 14, 1967, constituted absence without permission to be totally unfounded in the evidence. Detective Kelleher, assigned to the Illinois Crime Investigating Commission, testified that when he went to the Jordan Service Company office to serve Jordan with a subpoena to appear before Mr. Siragusa, he found Jordan at the office between 12:40 and 12:55 P.M. on Monday, April 3, 1967. Jordan and the other witnesses testified that Kelleher did not find Jordan in the Jordan Service office until shortly before 5:00 P.M., but even accepting Kelleher's testimony alone there is no evidence whatever in the record that Jordan's presence at the Jordan Service office was improper. Mr. Prendergast testified that his employees were allowed a full hour for lunch and that supervisory license investigators were expected to take lunch before 1:00 P.M. on days in which they were to appear in court.

Monday, April 3, 1967, was one of Jordan's court days and the time between 12:40 and 12:55 would have been part of his normal lunch hour for that day. Similarly, as to the afternoon of Friday, April 14, 1967, when Prendergast found Jordan at the Jordan Service office at 2:30 P.M., there is no evidence in the record that Jordan's presence was improper. While Fridays were normally court days for Jordan, Prendergast testified that on April 14, 1967, he knew of no court cases in which Jordan was involved. Jordan was allowed to take his one hour lunch time whenever he chose and Jordan told Prendergast he was in fact awaiting a luncheon date at that very time. Two witnesses testified that

Jordan had arrived at the office immediately before Prendergast called.

Taken in the light most favorable to the appellant, the evidence merely showed Jordan's presence at the offices of Jordan Service between 12:40 and 12:55 P.M. on April 3, 1967, and at approximately 2:30 P.M. on April 14, 1967. It was uncontroverted that on both occasions Jordan was and could legitimately have been on his lunch hour. It was therefore the clear duty of the trial court to set aside the findings of the Civil Service Commission that Jordan was absent without permission.

■■ Defendant's second contention on appeal is that plaintiff's refusal to divulge the name of a client of the Jordan Service Company to the Executive Director of the Illinois Crime Investigating Commission was conduct unbecoming a City employee and so detrimental to the best interests of the City of Chicago as to justify plaintiff's discharge. Plaintiff contended that section 201—12 of the Detectives and Investigators' Act provides:

"201—12, § 12. Employees not to divulge information.]

Any person who is, or has been an employee of such licensee, shall not divulge to any person other than his employer, except as his employer shall direct, and except as may be required by law, any information acquired by him during such employment, with respect to any of the work to which he, or any other employee of such licensee shall have been assigned by such licensee, or with respect to any of the work, business or affairs of such licensee. Any such employee violating the provisions of this section * * * shall be guilty of a misdemeanor [,]"

Ill. Rev. Stat. 1967, ch. 38, par. 201—12, prohibited him from divulging the name of any Jordan Service client. Defendant urges, however, that Jordan was required by law to answer Siragusa's questions as the Illinois Crime Investigating Commission Act [Ill. Rev. Stat. 1965, ch. 38, pars. 203—1—203—17, (repealed 1971)] provided that the Commission could issue subpoenas and compel testimony through the contempt powers of the Circuit Court. In the instant case, it is unrefuted that Jordan was not under subpoena when he appeared before Mr. Siragusa, nor is there any evidence that Mr. Siragusa, or the Crime Commission took any steps subsequent to Jordan's refusal to divulge the name of a Jordan Service client to compel such answer. It is thus apparent that in the instant case Jordan was not required by law to answer Siragusa's questions and there is no evidence that Jordan's failure to do so was detrimental to the best interests of the City of Chicago.

Defendant's final contention on appeal is that the finding of the Civil

750

Service Commission that plaintiff was guilty of a conflict of interest in that in April 1967 he had an interest in the Jordan Service Company is supported by the manifest weight of the evidence.

■■ As a supervisory license investigator for the City of Chicago, Jordan supervised six or seven license investigators who went from door to door checking business licenses and he was also to check the districts himself from time to time. The record reveals that the business of the Jordan Service Company consisted of approximately 90 per cent guard work, 7 per cent investigative work and 3 per cent polygraph work. There was no evidence that the Jordan Service Company ever investigated anything having to do with any agency of the City of Chicago. There was also no evidence during the time in question that Jordan himself physically participated in guard duty, investigations, or polygraph tests. No evidence was offered at the hearing to show that Jordan's limited connection with the Jordan Service in any way adversely affected his performance as a City employee, that his association with the company in any way brought him into conflict with the City, or that the company itself ever was in conflict with the City interest. The trial court properly held that the finding of the Civil Service Commission, that Thomas Jordan was guilty of a conflict of interest, was without substantial support in the evidence.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Judgment affirmed.

DIERINGER, P. J., and BURMAN, J., concur.