Oliver B. Christenson, Plaintiff-Appellant, *v.* The Board of Fire and Police Commissioners of the Village of Oak Forest, Defendant-Appellee.

(No. 57486; ▮▮▮▮▮▮▮)

First District (4th Division)—April 25, 1973.

Walter C. Wellman, of Chicago, for appellant.

David P. Schippers, of Chicago, (Schippers, Betar, Lamendella & O'Brien, of counsel,) for appellee.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

This is a suit filed under the Administrative Review Act. (Ill. Rev. Stat. 1969, ch. 110, par. 274.) Plaintiff, Oliver B. Christenson, was charged with misconduct and ordered removed from his position as Chief * of the Police Department of the Village of Oak Forest, by a decision of the Board of Fire and Police Commissioners of the Village, pursuant to Section 10—2.1—17 of the Municipal Code. (Ill. Rev. Stat. 1969, ch. 24, par. 10—2.1—17.) Judgment was entered in the Circuit Court affirming the dismissal by the Board and plaintiff appeals.

The record reveals that on March 4, 1969, there were charges filed against the plaintiff with the Board of Fire and Police Commissioners. On March 14, 1969, plaintiff was served with a notice of suspension without pay for a period of 30 days commencing on March 4, 1969, pending formal hearing on April 3, 1969. On that date plaintiff appeared before the defendant Board and demanded an immediate hearing on the charges. The hearing was continued, over plaintiff's objections, until May 1. On April 8, 1969, plaintiff demanded reinstatement with pay as of April 3, 1969.

On April 10, 1969, the defendant served plaintiff with a notice of

---

* Although the order discharging the plaintiff reads "sergeant", all the evidence indicates that the plaintiff was chief of police.

suspension without pay for a period of 30 days effective April 5, 1969. Plaintiff again appeared before the Board on May 1, 1969, and the hearing was again continued over objection by plaintiff. On September 23, 1970, the defendant Board dropped the charges which had been filed on March 4, 1969.

On June 25, 1970, new and different charges were filed against the plaintiff with the defendant Board and the plaintiff was suspended from the Police Department for a period of 30 days effective June 27, 1970.

The charges filed on June 25, 1970, related to five specific acts of alleged misconduct. After a public hearing, the Board found the plaintiff guilty of conduct unbecoming an officer with respect to two of the allegations and found that the other three allegations were not sustained by a preponderance of the evidence. The Board discharged the plaintiff from the Police Department, and the trial court affirmed the decision of the Board.

The charges on which the plaintiff was found guilty were as follows:

"2. On or about November 20, 1968, said Oliver B. Christenson forced Thomas Derouin, who was at the time under arrest by said Oliver B. Christenson, to purchase $100.00 worth of raffle tickets from the respondent in exchange for having all charges against said Thomas Derouin dropped.

3. In or about December, 1968, said Oliver B. Christenson attempted to persuade one Edward Bennett, who was at the time a part time police officer on the police force of the Village of Oak Forest, to sell pornographic films to the public at a price of $10.00 a reel."

With regard to the charge in paragraph two, Thomas Derouin testified that on or about November 20, 1968, at about 7:00 P.M., he and three friends were in front of a restaurant in Oak Forest. Derouin stated that he had a fuse in his hand and that he threw it across the street. In a couple of minutes, five squad cars came up. Derouin went to the station with the police, but no charges were placed against him. Derouin said he purchased $25 worth of raffle tickets at the police station. He stated that the tickets were on the table and that he gave the money to the plaintiff. He and his friends were allowed to leave the police station. He testified that he was never told that if he purchased the tickets he would not be arrested and charged with a crime.

Officer Arthur Wolfe testified that he was in the room with Tom Derouin, the other boys, and the plaintiff on the evening in question. He said he was informed by the plaintiff that the boys wished to purchase some raffle tickets. Wolfe stated that the boys waited for someone

to bring them money to purchase the tickets. Fred Koning, a friend of Thomas Derouin's, testified that he loaned Tom Derouin about $8 on the occasion in question.

The plaintiff, Oliver B. Christenson, testified that on November 20, 1968, he was employed as Chief of Police, Oak Forest, with the rank of captain. He stated that he was patrolling by car when he noticed a boy throw a flare into an empty lot. He pulled over to where Thomas Derouin and three other boys were. The plaintiff stated that the boys rode to the police station in the squad car. At the station, Chief Christenson told the radio operator not to run a card on the boys because he was just going to talk to them. Christenson stated that he reprimanded Thomas Derouin. He said he told Derouin a raffle was being held by the police department for the purpose of erecting a gun range and the drawing of said raffle was being held at the mayor's ball. The funds from the purchase of the tickets were to be turned over to the police department. He stated that the boys wanted to know if they could purchase tickets. They did so. The boys then left the station. The plaintiff denied that Thomas Derouin was ever under arrest or that he was brought to the station for the purpose of placing charges against him. Christenson stated that he had known Thomas Derouin since he was six or seven years old, and that Derouin came to the police station a couple of times a week. Derouin also did work for the Police Department, and his father was a part-time policeman.

Eleanor Fitzpatrick testified that she was a radio dispatcher for the Oak Forest Police Department in November, 1968. She stated that when there is a complaint or arrest, a card is made up on the person when he is brought to the station. On the occasion in question, when she asked whether the Chief wanted a complaint on the boys, Christenson answered, "No, we're not going to arrest the boys. We're just here to talk to them." She also stated that the boys were laughing and talking as they left the station.

■■ On the basis of this record, we think the Board's finding that Christenson forced Derouin to purchase raffle tickets in return for having charges against him dropped was not supported by the evidence. In our view, there was insufficient evidence to establish either that Derouin was forced to buy the tickets, that he was in fact under arrest at the time he purchased them, or that any complaint was ever filed against him, as charged by the Board. It is certainly not unusual for boys to be brought into a police station without being arrested or having complaints filed against them when the facts do not warrant such action, as in the situation before us.

With regard to the other charge, Edward Bennett testified that in December, 1968, he was a part-time policeman in the Village of Oak Forest. He stated that late in December, at about 8:00 P.M., he had a conversation with Chief Christenson in which the plaintiff offered to sell him stag films at $10 a roll. Later that same evening, in a second conversation, Bennett asked Christenson to borrow some of the films. Christenson gave Bennett 14 films, four of which he viewed in their entirety. He brought the films back to the station at about 2:00 A.M. and returned them to Chief Christenson. Bennett said he purchased two of the films for $20. He viewed the two films and destroyed them. Bennett testified further that the films portrayed both normal and deviate sexual relationships. He also stated that in his opinion, the films were not obscene. He said that on February 8, Christenson told him that if he went along with the story that the films were found in a car, Christenson wouldn't involve Bennett any further.

Thomas Buffo testified that in December, 1968, he was a part-time police officer in Oak Forest. He said he had a conversation with Bennett about some films which had been confiscated from a stolen automobile. Bennett said he would like to see them and Buffo suggested he ask the Chief. The two men approached the Chief. Buffo said he understood some stag films had been confiscated and the Chief said he didn't really know if they were stag films because he didn't have a projector to look at them. Bennett said he had a projector and the Chief told Bennett to take two rolls home, look at them, and if they were stag films, to destroy them. Buffo further testified that Bennett was not asked to sell the films to the general public.

The plaintiff testified that in December, 1968, he had a conversation with Edward Bennett regarding certain films. Officer Buffo was also present. Christenson stated that the two men asked him if he had any films which were taken from a car and he replied that he did. He said he did not know what was in the films because he didn't have a projector. Bennett said he had one and could take the films home and view them. The plaintiff said he told Bennett to take a couple home, look at them, and if they were stag films, to destroy them. Christenson said he gave Bennett two rolls of film. A couple of evenings later, the plaintiff talked to Bennett, who said the films were stag films, but in his opinion, they were not obscene. Christenson said he told Bennett to destroy the films and Bennett said he already had done so. The plaintiff stated that he destroyed the remaining films the next evening. The plaintiff further testified that the films were taken from an auto which was recovered by the Blue Island Police Department on December 10 and transferred to

Oak Forest. He denied telling Bennett that if he would go along with the story about the confiscated films, he wouldn't involve him. He also denied that Bennett paid him any money for the films.

On the basis of this testimony, there is no evidence at all to support the charge that Christenson attempted to persuade Bennett to sell pornographic films to the public. Moreover, none of the allegedly obscene films were introduced into evidence and Bennett testified that in his opinion, the films were not obscene.

While it is well settled that findings of fact by an administrative agency are to be taken as *prima facie* true and that the courts are not authorized to make an independent determination of the facts, a reviewing court is not relieved of its duty to examine the evidence and to set aside findings which are not supported by substantial evidence. (*Jordan v. Civil Service Com.*, 4 Ill.App.3d 741, 746-7, 281 N.E.2d 687, 691.) In the instant case, we believe the decision of the Board was unwarranted and founded on insufficient evidence, and that the trial court erred in affirming the Board's order.

Because we conclude that the judgment below was against the manifest weight of the evidence, we do not reach the other questions raised by the plaintiff.

For the reasons stated, the judgment of the Circuit Court is reversed.

Reversed.

ADESKO and DIERINGER, JJ., concur.