HECTOR VIERA, Plaintiff-Appellee, *v.* THE ILLINOIS RACING BOARD
*et al.*, Defendants-Appellants.

First District (4th Division)    No. 76-1009

Opinion filed October 12, 1978.

William J. Scott, Attorney General, of Chicago (John D. Whitenack, Assistant Attorney General, of counsel), for appellants.

Coghlan and Joyce, of Chicago (James L. Coghlan and Randall Spencer, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

The plaintiff, Hector Viera, a thoroughbred jockey, was suspended for 10 calendar days by order of the Illinois Racing Board. The suspension was reviewed by the circuit court of Cook County under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) and reversed. The circuit court found that the Racing Board's decision was contrary to the manifest weight of the evidence. The Racing Board appeals.

We affirm the trial court.

On September 2, 1975, Viera rode a horse named Slade's Prospect in the seventh race at Arlington Park, Illinois. At the beginning of the race, Viera placed Slade's Prospect near the rail directly behind three horses vying for the lead. When the horses reached the start of the clubhouse turn, Slade's Prospect was still laying fourth.

Towards the end of the clubhouse turn, a horse moved up on the outside of Viera and boxed him in. The lead horses stayed tightly bunched together through the turn and the drive down the backstretch and an opening *between them* never materialized. It was later claimed: (1) that an opening existed near the rail during the stretch drive; and (2) that Viera unreasonably failed to take advantage of it. In the last sixteenth of the mile race, Viera found some running room on the outside and Slade's Prospect came on strong to finish third.

On September 3, 1975, the day following the race, three stewards, Theodore Atkinson, Henry Hauer and Arthur Howard, suspended Viera 10 calendar days "for an unprofessional indecisive ride" in violation of Rule 234 of the Illinois Racing Board:

"Rule 234 Horse Ridden Out—

Every horse in every race must be ridden so as to finish as near as possible to first, and show the best and fastest race it is capable of at that time and shall not be eased up or coasted, even if it has no apparent chance to win first, second, third or fourth prize, so that the record of that race may, as truly as possible, show its real ability."

On September 8, 1975, a *de novo* hearing on Viera's suspension was commenced before Herbert Channick, a hearing officer of the Illinois Racing Board. After the witnesses viewed a film of the race in question, the following evidence and testimony was presented at the hearing.

The Illinois Racing Board called three witnesses, Theodore Atkinson, Henry Hauer and Arthur Howard, the stewards who had suspended Viera. Atkinson delineated two specific reasons why he and the two other stewards had concluded that Viera's ride violated rule 234. The first reason cited was that at the start of the clubhouse turn, Viera failed to take advantage of an opportunity to move Slade's Prospect outside the three horses in the lead.

Atkinson testified that Viera "could have moved to the outside anywhere on the far [clubhouse] turn until the very last part" when another horse moved up on Viera and closed the outside off. Atkinson asserted that it would have been prudent for Viera to move outside the three horses in the lead in order to ensure that he (Viera) would have racing room down the backstretch. However, in describing a film of the race in question, Atkinson appeared to contradict himself:

"This is the clubhouse turn into the backstretch. We can see that *to move up at this time might not be the best thing to do*. However, he [Viera] does have the opportunity to do so * * *." (Emphasis added.)

Atkinson testified on cross-examination that in *most* races the horses fighting for the lead fan out across the track as they come out of the clubhouse turn, thereby opening up holes which trailing horses can drive

through in the backstretch. Atkinson testified, further, that had Viera moved to the outside of the lead horses at the start of the clubhouse turn, he would have been four horses wide on the turn and Slade's Prospect would have covered a lot more ground than those horses nearer the rail. Atkinson then acknowledged that generally it is advantageous for a jockey to stay near the rail and behind the lead horses when going through the clubhouse turn:

> "Q. And if a rider was riding a race and had placed his horse on the rail he would be saving the most ground in the race, would he not?
>
> A. Yes, of course.
>
> Q. And he would be running the shortest distance to the finish line; is that right?
>
> A. Yes.
>
> Q. And normally the horses do fan out during the stretch run and it would be to his advantage to save as much ground as possible and reserve his horse for this run?
>
> A. Generally speaking, yes."

The only other testimony elicited from the three stewards with regard to the "reasonableness" of Viera's decision to stay near the rail through the clubhouse turn, occurred on Henry Hauer's cross-examination. Hauer testified that most of the time, Viera's position near the rail is a desirable place to be:

> "Q. If I was riding behind the horse on the lead would it be to my advantage to stay as close to that rail as possible and to save the most ground?
>
> A. Yes. It would be to your advantage if the horses break when they come out of the turn.
>
> Q. Do they usually?
>
> A. Sometimes, not always.
>
> Q. Sometimes they do, and sometimes not?
>
> A. Right.
>
> Q. And more times they do, than not, is that correct?
>
> A. I suppose so.
>
> Q. So, the percentages are in my favor if I am sitting on the rail behind the horse on the lead that an opening may come and I can save a lot of distance in ground?
>
> A. It could be."

The second reason cited by Atkinson as to why he and the two other stewards had found Viera's ride violative of rule 234 was that, in the drive down the backstretch, Viera failed to take advantage of an asserted opening near the rail to the left of the lead horse Davey Dan.

There were only two statements presented by the three stewards on

this point. Atkinson simply stated that an opening did exist and that Viera should have taken advantage of it. Hauer testified that Viera "could not make up his mind to go inside or outside" down the backstretch and "he changed courses several times, and in fact, he went out on the horse outside of him and the horse knocked him back in."

Finally, the three stewards testified as to how the trainer of Slade's Prospect, Joseph Rodriguez, reacted to Viera's suspension. Atkinson testified that Rodriguez had come to the stewards' office on September 4, 1975, the day following Viera's suspension, and talked with him and the two other stewards. Atkinson asserted that Rodriguez told him: "I am with you on that Viera ruling." Rodriguez also "said words to the effect that this was the protection that they need."

Atkinson testified that on September 6, 1975, he asked Rodriguez if Rodriguez would testify for the Racing Board in proceedings concerning Viera's suspension. Rodriguez stated he would prefer not to. However, Rodriguez did offer to furnish the stewards with a signed statement concerning his feelings on the matter. The statement, drafted by Atkinson, provides:

> To whom it may concern:
> This is to certify that I have told the Arlington Park Stewards that I was very disappointed and dissatisfied with the performance of Jockey Hector Viera on my 'Slade's Prospect' in the seventh race, September 2, 1975."

Steward Howard testified on cross-examination that when Rodriguez appeared in the stewards' office on September 4, the general impression that he received was that Rodriguez was unhappy about the race and the way it was ridden. Howard testified further that he could not recall if Rodriguez said "I'm with you on the Viera ruling" or that "we need protection of this kind." Howard pointed out that Rodriguez speaks with broken English and is very difficult to understand.

Steward Hauer testified that when Rodriguez appeared in the steward's room on September 4, he (Hauer) did not speak to Rodriguez. Rather, Atkinson told Hauer what Rodriguez had to say. When asked why he had not talked to Rodriguez directly, Hauer stated: "becuse [Rodriguez] is difficult * * * to understand * * *."

Viera called as his first witness, Joseph Rodriguez, the trainer of Slade's Prospect. Rodriguez denied he told Atkinson that he agreed with or was glad about Viera's suspension. Rodriguez asserted that he merely told the stewards that he was "disappointed" with his horse's performance and with Viera's split-second decision to stay near the rail through the clubhouse turn. "[T]o me he gave an honest ride. [T]hey [the jockeys] have a split second to make up their mind as to what to do."

With regard to the statement he signed, Rodriguez testified that he thought he was expressing "dissatisfaction" with his horse's performance

and not with Viera's ride. In fact, Rodriguez claimed that, after the race in question, he had asked Viera to ride Slade's Prospect again in an upcoming stake's race. Rodriguez testified that Stanley Conrad, the horse's owner, later determined he wanted a different rider due to the publicity connected with Viera's suspension.

Viera also called five highly experienced and renowned jockeys to testify in his behalf. Four of these jockeys testified with regard to the reasonableness of Viera's decision to stay near the rail and behind the three lead horses when going through the clubhouse turn. The four jockeys agreed that horses battling for the lead have a definite tendency to fan out as they come out of the clubhouse turn into the backstretch. Jockey Larry Snyder testified that if a jockey trys to drive around three horses vying for the lead going into the clubhouse turn, "he won't be able to count the number of additional lengths his horse will have to run in relation to those horses nearer the rail. And then if the lead horses fan out [he] will lose a lot more ground" by being pushed even farther outside.

In light of the tendency of lead horses to fan out at the end of the clubhouse turn thereby creating openings which trailing horses can drive through down the backstretch, Jockey William Gavida testified that Viera's decision to save ground by staying near the rail and behind the three horses in the lead, rather than driving around them, was a decision 90% of all jockeys would have made had they been in the same position.

Two of the jockeys called by Viera to testify had ridden the horse, Slade's Prospect. They testified that Slade's Prospect will relax and loaf on the lead and therefore must be held back in the pack until the very last part of the race. Rodriguez, Slade's Prospect's trainer, testified that he instructs the jockeys who ride for him to hold Slade's Prospect back and then "come on with him" at the end of the race. Rodriguez testified further that Viera was aware of these instructions when he rode Slade's Prospect in the race in question.

The five jockeys called as witnesses by Viera also testified with regard to the second reason cited for Viera's suspension; that he had unreasonably failed to take advantage of an opening which the Stewards claimed existed near the rail to the left of the lead horse Davey Dan at sometime during the stretch drive.

Earl Fires, the jockey who rode Davey Dan in the race in question, testified that he had kept Davey Dan near the rail to prevent Viera and Slade's Prospect from getting inside of him. He testified further that there was not enough room for Viera to get through on the inside along the rail. "If he [Viera] drove in he would have bumped into me, and they probably would have taken his number, because he would have had to force his way in." When asked if he had a reputation for guarding the rail, Fires testified: "I do ride tight. I don't ride to hurt anybody but I don't let

anybody through very often." Jockey William Gavida was also asked if Fires had a reputation for guarding the rail:

"Q. He [Fires] is a difficult rider to ride next to?
A. Yes.
Q. You know that to be a fact?
A. Yes.
Q. And everybody who rides here knows that?
A. We know it is tough to ride inside of him. It is very tough."

Four of the jockeys testified that Fires' horse did not run in a straight line down the stretch. At times the horse would come out slightly from the rail and then move back in. They all testified that Viera had only "a split second" to decide whether he could get through inside of Fires' horse on the rail. Jockey William Gavida stated: "It is very difficult because you don't know what [will] happen, [will] the horse in front duck in or will he stay right there."

Viera testified in his own behalf. Viera stated that at no time was he able to get inside of Fires' horse without "bothering" it because Fires' horse would go in towards the rail and then out and then in again. The record indicates that during the stretch drive, Viera attempted to move on the outside of Fires' horse, but was bumped back inside. In fact, Slade's Prospect suffered a serious cut on his leg from the attempt. In the last sixteenth of the mile race, Viera was able to maneuver outside for a run at Fires' horse.

Following a review of all the evidence presented and after having heard closing arguments, the Illinois Racing Board affirmed the stewards' suspension of Viera for having violated rule 234. The Racing Board and its attorney agreed that there was no suggestion in the evidence or the stewards' charges that Viera was not riding to win. Rather, the Racing Board made clear that Viera was suspended because he had exercised, what they termed, unreasonable professional judgment in the race in question.

The trial court reversed the Racing Board's ruling and the Racing Board has taken this appeal.

The Illinois Racing Board contends that the reversal of its decision by the trial court, as being against the manifest weight of the evidence, was error. We disagree.

■■ While it is true that findings of fact by an administrative agency are *prima facie* true and correct (Ill. Rev. Stat. 1977, ch. 110, par. 274), this does not permit Illinois courts to automatically place a stamp of approval on the findings of the agency merely because such agency heard the witnesses and made the requisite findings (*Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 145 N.E.2d 736; *Jordan v. Civil Service Com.* (1972),

4 Ill. App. 3d 741, 281 N.E.2d 687). The decision of an administrative agency must be set aside if it is contrary to the manifest weight of the evidence. *Kerr v. Police Board* (1974), 59 Ill. 2d 140, 319 N.E.2d 478.

■■ In examining the record, a reviewing court will and must look at all the evidence in opposition to the challenged finding as well as the evidence which tends to support it. For as the Illinois Supreme Court stated in *Corn Products Refining Co. v. Industrial Com.* (1955), 6 Ill. 2d 439, 443, 128 N.E.2d 919, 922:

> "[E]ven though there is evidence in the record which, if undisputed, would sustain [the agency's] finding * * * such evidence is not sufficient if, upon consideration of all the testimony and circumstances shown in the record, it appears that the manifest weight of the evidence is against such finding. [Citations.]" Accord, *Jordan v. Civil Service Com.* (1972), 4 Ill. App. 3d 741, 281 N.E.2d 687.

Our detailed and exhaustive examination of the record convinces us that the Racing Board's decision is contrary to the manifest weight of the evidence. Consequently, we are compelled to affirm the trial court's judgment setting aside the Racing Board's ruling. See *Pletcher v. Illinois Racing Board* (1978), 57 Ill. App. 3d 73, 372 N.E.2d 1075.

Judgment affirmed.

DIERINGER and ROMITI, JJ., concur.