THOMAS J. McHUGH, Plaintiff-Appellant, *v.* THE CIVIL SERVICE COMMISSION OF COOK COUNTY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 78-1098

Opinion filed February 2, 1979.

David P. Schippers, of Chicago (Schippers, Betar, Lamendella & O'Brien, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Raymond J. Prosser, Assistant State's Attorneys, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from an order of the circuit court affirming the Civil Service Commission (Commission) sustaining two charges brought against plaintiff and discharging him from the Cook County Department of Highways (Department). The issues presented are (1) whether the findings and decision of the Commission are against the manifest weight of the evidence; and (2) whether discharge was an excessive penalty in this case.

Plaintiff, a highway engineer in charge of the entire maintenance department for the Cook County Department of Highways since 1970, was suspended from his position on December 13, 1976, after a Chicago newspaper published the findings of a Better Government Association

investigation which revealed widespread disciplinary problems among road crews. On January 4, 1977, charges were filed by the superintendent of highways seeking plaintiff's discharge, alleging (1) that plaintiff failed to provide adequate and proper supervision of personnel under his jurisdiction; (2) that plaintiff failed to institute sufficient standard practices and procedures to prevent employees under his direction and control from violating department guidelines and rules; and (3) that plaintiff failed to delegate clear lines of supervisory authority for road crew personnel under his jurisdiction.

At the Commission hearing, William Recktenwald, chief investigator for the Better Government Association, was called as a witness by the Department and testified that he made observations of Department work crews on approximately 19 different days between June and August of 1976. In particular, he testified that on July 14, 1976, he followed maintenance truck 286 as it left the District III garage in LaGrange at 7:17 a.m.; that the crew drove to a bowling alley where they stopped and had breakfast; that after breakfast they worked for about two hours; that later in the afternoon they were observed driving at a low rate of speed along a road which is not maintained by the Department; that they pulled over to the side of the road and waited for about 20 minutes; and that they returned to the District III garage at 2 p.m. Recktenwald also testified that on August 3, 1976, he followed a crew which left the District I garage at 8:30 a.m.; that the crew stopped for breakfast and then stopped at a hardware store; that they finally reached their work site 1½ hours after they left the garage; that they cut down a tree at the work site and returned to the garage by 11:15 a.m.; and that the crew stayed in the yard adjacent to the garage for the remainder of the day. A transcript of Recktenwald's prior testimony at a hearing regarding another Department employee was introduced into evidence by stipulation. The transcript contained additional observations by Recktenwald of crews; namely, that on June 30 he observed truck 285 leave its garage at 7:20 a.m.; that it was driven to a restaurant where the crew stayed for approximately one-half hour; that it was then driven to a work site where one worker cut the grass along an expressway while the rest of the crew drove along the road at a low rate of speed, making various stops but not performing any work. He also testified that on July 27, he again observed the crew of truck 285; that one of the crew walked from the Northfield Village garage where the truck was parked over to a Dominick's store and stayed for about 20 minutes; that he returned to the garage, and the crew drove away about 12:55 p.m.; that they drove at a low rate of speed down several highways, after which they stopped at a snack shop for about 20 minutes; that they then drove to Main and Crawford, where one worker went into a drugstore and another into a hardware store; that when they

left Main and Crawford, the truck was driven at a low rate of speed to a restaurant where the crew stayed for 15 minutes, following which they returned to the district garage via roads which were not maintained by the Department, arriving at 2:40 p.m.; and that during this entire period of time he did not observe any of the crew working. The transcript discloses that on cross-examination Recktenwald testified that his observations were not revealed to anyone in the Department until the newspaper story appeared. During his testimony, five photographs of work crews taken during the course of the Better Government Association investigations were admitted into evidence.

Daniel Sekulich, the district engineer for District III, testified that plaintiff was his immediate supervisor and, since the District III offices are in the same building as plaintiff's, he and plaintiff met daily; that he knew some men under his supervision were taking excessive coffee breaks; and he discussed the problem with plaintiff, who issued a "directive" thereon. On cross-examination, Sekulich testified that plaintiff was constantly on his back about the supervision of the men; that he and not plaintiff was charged with the duty to supervise the work crews; that he was suspended for 15 days for failure to supervise his crews adequately; and that he felt plaintiff "did a great job" in supervising him. In answer to questions by the commissioners, Sekulich stated that plaintiff's directive on coffee breaks threatened the men with possible suspension for violations; that the directive was posted for all employees to see; that plaintiff told him that if he caught workers drinking coffee at unauthorized times, he should "pull them out of the coffee shop and take them right upstairs" to plaintiff's office; that this in fact may have been done on one occasion; and that plaintiff further instructed him to write and forward to him a memo on any such incident. It was also revealed during this line of questioning that while work crews were instructed not to return to the Division III garage prior to 3 p.m., the men often came in too early; and that plaintiff told him to send these men back out if this occurred, or, if this was not possible, to give the men such miserable work that they would wish they had not returned early.

Anthony Fosco, the district engineer for District I and called as a witness by the Department, testified that plaintiff was his supervisor and that the two met every week; that he had no serious disciplinary problems with the crews in his district; that he had no knowledge of any of the matters revealed by the Better Government Association investigation until the article appeared in the newspaper; that he occasionally had minor problems with tardiness; and that plaintiff instructed him to "write up" such late employees. Fosco testified on cross-examination that although he could "write up" employees, neither he nor plaintiff had the authority to file charges; and that one of his subordinates, the road maintenance

supervisor, who had the primary duty to supervise work crews, was suspended on one occasion for 15 days for failure to adequately supervise the District I crews. Upon examination by the commissioners, Fosco explained that although he only met with plaintiff weekly, they spoke over the telephone once or twice a day; and that plaintiff instructed him to "write up" all rule infractions, but he never did so as he was unaware of any disciplinary problems in his district.

Plaintiff testified that as head of the maintenance department, he is responsible for developing various proposals and work specifications as well as for distributing contract work among the five districts; and that the five district engineers are his subordinates and under them are assistant district engineers, road maintenance supervisors, foremen, and crew workers. As to disciplinary matters, plaintiff testified that he sent directives concerning coffee breaks to the district engineers, instructing them to "write up" rule infractions; that upon receiving these reports he would rewrite them and forward them to the superintendent, who alone had the authority to file charges; that he filed 10 to 15 such memos in 1976; and that he never received a disciplinary memo from a district engineer without rewriting and forwarding it. Upon examination by the commissioners, plaintiff stated that he was unaware of the alleged rampant infractions by work crews; and that he received many complimentary letters expressing appreciation for the good condition of the roads during the winter.

After hearing the testimony, the Commission ordered plaintiff's discharge on the basis of two findings. It found that the record contained numerous instances of supervisors under plaintiff's immediate supervision failing to secure adherence to departmental directions regarding work schedules; that testimony was elicited from witnesses that employees under plaintiff's indirect supervision habitually engaged in unauthorized coffee breaks and work breaks; and that therefore plaintiff was guilty of the first charge of failure to provide adequate and proper supervision of personnel under his jurisdiction. The Commission also found that the testimony indicated that plaintiff's efforts to secure adherence to work rules was limited to the sending of notices to district engineers indicating that no coffee breaks or work breaks were permitted; that plaintiff was aware of the work rule violations but took no other action; and that therefore plaintiff was guilty of the second charge of failure to institute sufficient standard practices and procedures to prevent employees under his direction and control from violating department guidelines and rules. No findings were made with respect to the third charge of failure to delegate clear lines of authority. On writ of certiorari, the circuit court affirmed the Commission and this appeal is from that order.

OPINION

■■ Plaintiff first contends that the findings and decision of the Commission are against the manifest weight of the evidence. It is, of course, established that the findings of an administrative agency on questions of fact are prima facie correct (*Oster v. Police Board* (1974), 22 Ill. App. 3d 403, 407, 318 N.E.2d 34, 37; *Lavin v. Civil Service Com.* (1974), 18 Ill. App. 3d 982, 988, 310 N.E.2d 858, 863), and that the only duty of a reviewing court is to ascertain whether the findings and decision of the administrative agency are against the manifest weight of the evidence (*Dante v. Police Board* (1976), 43 Ill. App. 3d 499, 502, 357 N.E.2d 549, 552; *Schnulle v. Board of Fire & Police Commissioners* (1974), 16 Ill. App. 3d 812, 818, 306 N.E.2d 906, 910). But a reviewing court is not relieved of its duty to set aside findings which are not supported by substantial evidence. (*Christenson v. Board of Fire & Police Commissioners* (1973), 11 Ill. App. 3d 487, 492, 297 N.E.2d 639, 642-43; *Jordan v. Civil Service Com.* (1972), 4 Ill. App. 3d 741, 747, 281 N.E.2d 687, 691.) "Where there is not sufficient evidentiary support for the agency's determination, the courts must grant relief." *Stanton v. Board of Fire & Police Commissioners* (1976), 37 Ill. App. 3d 108, 110, 345 N.E.2d 822, 824.

As noted above, the Commission found that the record showed numerous instances of supervisors under plaintiff's immediate supervision failing to secure adherence to work schedules; that employees under plaintiff's indirect supervision habitually engaged in unauthorized coffee and work breaks; and that therefore plaintiff "failed to provide adequate and proper supervision of personnel under his jurisdiction" as charged.

We recognize that there was considerable testimony by Recktenwald and Sekulich that work crews often returned to the district garages earlier than authorized, and that this indicated that the district engineers, who were under plaintiff's immediate supervision, were not securing adherence to work schedules. We also recognize the testimony by these same two witnesses that unauthorized coffee and work breaks were a widespread disciplinary problem. We do not believe, however, that the Commission's ultimate conclusion that plaintiff failed to provide adequate and proper supervision of personnel under his jurisdiction is supported by the manifest weight of the evidence.

Concerning the problem of crews returning early, we note that only two of the five district engineers testified and only one of them, Sekulich, reported any such situation to plaintiff. He also testified, however, that in response to his report plaintiff instructed him that when this occurred to send the crews back out and, if this was not feasible, to give them unpleasant work in the yard to deter future work schedule violations. In

addition, plaintiff testified that he instructed the district engineers to write up any rule infractions and that when any such memos were received by him, they were always forwarded to the superintendent. As to the problem with excessive coffee breaks, again the record indicates that only Sekulich informed plaintiff of the problem, and Sekulich admitted that plaintiff was constantly "on his back" about supervising the men more closely. Plaintiff and Sekulich testified that directives were issued by plaintiff concerning coffee breaks which threatened violators with possible suspension and were posted in plain view of the employees. Sekulich also stated plaintiff instructed him that when he observed any workers taking unauthorized coffee breaks, he should "go ahead and pull them out of the coffee shop and take them right upstairs" to plaintiff's office; that plaintiff further instructed him to write a memo on any such infraction and forward it to plaintiff; and that plaintiff "admonished" violators after receipt of an unfavorable memo. With regard to the other sundry violations uncovered by the Better Government Association, the testimony indicates that neither the district engineers nor the Association brought these disciplinary problems to plaintiff's attention.

We believe the relevant testimony, which is uncontradicted, clearly shows that plaintiff did offer some guidance to the district engineers whenever he was informed of disciplinary problems and the record does not reveal a single instance in which plaintiff failed to take supervisory action after he was made aware of disciplinary problems. We think it would be unreasonable to hold plaintiff for problems of which he was not aware because, as the uncontradicted testimony of Fosco indicated, the road maintenance supervisor had the primary responsibility to report those men who were violating rules, followed by the assistant district engineer, and then the district engineer, who had the ultimate responsibility for supervising men in a given district. If plaintiff remained unapprised of certain disciplinary problems, the fault appears to have been that of the district engineers and their subordinates, as the record discloses no other manner in which plaintiff reasonably could have discovered work violations other than to himself follow the workmen on their assignments. Not only was there no testimony that he should have taken any such action but, to the contrary, it appears clear that he would not be expected to do so because the primary responsibility for the supervision of the workmen was in the road-maintenance supervisors with the ultimate responsibility in the district engineers.

Nor do we believe that on the record presented plaintiff can be held responsible for violations which may have continued after he took steps to curtail them. Both Sekulich and Fosco testified that the district engineers, and not plaintiff, supervised the work crews. Thus, if rule

violations continued after plaintiff issued instructions to the district engineers, it would appear that the district engineers or their subordinates were at fault for failing to properly execute plaintiff's directives.

■ From our review of the record, we see nothing to indicate what other supervisory action plaintiff should or even might have taken in addition to that described above. We accordingly conclude that the Commission's finding that plaintiff was guilty of the charge of failure to provide adequate and proper supervision of personnel under his jurisdiction is not supported by the record and is against the manifest weight of the evidence.

The Commission also found that plaintiff's efforts to secure adherence to work rules were limited to the sending of notices to district engineers indicating that no coffee breaks or work breaks were permitted; that plaintiff took no other action; and that therefore plaintiff "failed to institute sufficient standard practices and procedures to prevent employees from violating department guidelines and rules" as charged.

In this regard, we note that the record clearly demonstrates plaintiff's supervisory efforts entailed more than the mere sending of notices to district engineers and that he did in fact take other action, as noted above. Neither do we find justification in the record for the conclusion that plaintiff failed to institute sufficient standard practices and procedures. It appears from plaintiff's uncontradicted testimony that because of the organizational structure of the Department, he could do little more than rewrite disciplinary memos received from the district engineers and forward copies to the superintendent, who alone possessed the authority to bring charges before the Commission. Plaintiff explained that he forwarded 10 to 15 such complaints to the superintendent in 1976, and that he never received a disciplinary memo from a district engineer without rewriting and forwarding it to the superintendent. And, as we discussed above, plaintiff took steps to encourage the district engineers to enforce discipline and submit memos on disciplinary problems. There was no testimony to indicate that plaintiff failed to act to the full extent of the authority granted to him by the Department and, as stated above, there has been nothing pointed out, nor have we found anything in the record, which informs us as to any other procedures that plaintiff should or could have taken. We accordingly hold that the Commission's conclusion that plaintiff was guilty of the charge of failure to institute sufficient standard practices and procedures is against the manifest weight of the evidence.

In view of our conclusion that the findings of the Commission are against the manifest weight of the evidence, we need not reach the question of whether discharge was an excessive penalty.

For the reasons stated above, the order of the circuit court affirming the findings of the Commission is reversed, and the cause is remanded to the trial court with directions to order the reinstatement of plaintiff.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.