DELMER PLETCHER, Plaintiff-Appellee, *v.* THE ILLINOIS RACING BOARD *et al.*, Defendants-Appellants.

First District (1st Division)    No. 76-991

Opinion filed January 30, 1978.

William J. Scott, Attorney General, of Chicago (George W. Lindberg and Paul V. Esposito, Assistant Attorneys General, of counsel), for appellants.

Robert J. Beranek, of Alsip (Allan A. Ackerman, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Delmer Pletcher (plaintiff), a harness racing driver, was suspended for 5 days by order of the Illinois Racing Board. The circuit court reversed. The Board has appealed.

In this court, the Board contends that plaintiff was not denied due process of law by the decision of the State stewards which preceded the action by the Board; due process rights of plaintiff were not violated by the admission of certain testimony at the Board hearing; a quorum was present at the Board meeting at which the suspension action was taken and the decision of the Board is not contrary to the manifest weight of the evidence. Plaintiff urges that he was denied due process of law by the decision of the State stewards which preceded the action of the Board; the suspension was a denial of due process of law for lack of a quorum at the meeting of the Board; and the findings of the Board were manifestly contrary to the evidence. Our view of the case requires us to affirm the judgment because the decision of the Board was contrary to the manifest weight of the evidence.

After the trial judge had examined the entire record before him, he held that "fundamental rules of decency and due process require * * *" reversal of the result reached by the Board. The trial judge stated that, in view of his lack of expert knowledge of harness racing, he would not decide whether the decision of the Board was contrary to the manifest weight of the evidence.

■■ There was considerable testimony on the merits of the case from expert witnesses most of whom were qualified and experienced harness drivers. Opinions were expressed on both sides of the factual issue as to whether the suspension of plaintiff was justified as a violation of one of the rules of the Board. Under these circumstances we see no reason why this court may not proceed to a determination of the weight of the opinions expressed by the experts. In so doing, we are proceeding in accordance with the policy expressed by the Supreme Court of Illinois "of deciding constitutional questions only where necessary to a disposition of the case." *Bender v. City of Chicago* (1974), 58 Ill. 2d 284, 287, 319 N.E.2d 34, and authorities there cited.

The controversy revolves about Harness Rule 18.5A. The parties agree that this rule was promulgated by the Board and was in full force and effect at the time of the race in question. The rule states:

> "In the event a drive is unsatisfactory due to lack of effort or carelessness, and the judges believe that there is no fraud, gross carelessness, or a deliberate inconsistent drive, they may impose a penalty under this sub-section not to exceed 10 days suspension or a $100 fine."

It is the theory of the Board that plaintiff violated the rule by the manner in which he drove his horse during a race which took place on February 5, 1975, so that plaintiff was guilty of "lack of effort or carelessness* * *." It is agreed that "fraud, gross carelessness, or a deliberate inconsistent drive* * *" are not involved here. Plaintiff drove the same horse in races on January 3, January 10, February 5 and February 10, 1975. The critical race was the one which took place on February 5, 1975. Apparently tapes or films are made of all races. Films of all the races in question were shown at the hearings before the Board and before the trial court. At the hearing before the Board, two stewards testified in support of the Board's theory, and plaintiff and three other harness drivers testified in support of plaintiff's theory. One steward, Robert Milburn, testified to the effect that plaintiff's driving in the critical race on February 5, 1975, was "probably an error in judgment."

The Board also heard testimony from another steward, Maylon Nixon. He testified that after the race the stewards had all agreed informally that plaintiff had not violated the rule in question. Several days later he had a telephone conversation with another steward in which Nixon stated, "I myself felt that we should give Mr. Pletcher [plaintiff] five days, not under any fraud but for carelessness and neglect of the way he drove one particular horse." The stewards, including Mr. Nixon, then voted for a 5-day suspension of plaintiff and appeal to the Board followed. In our view the validity of Mr. Nixon's testimony is severely curtailed by his inconsistent voting.

These opinions of stewards Milburn and Nixon are the only direct evidence in this record upon which any theory of plaintiff's guilt could rest. The probative value of their testimony is largely negated by the fact that both of these men had previously agreed that no violation had occurred.

Plaintiff himself testified that when the race commenced he was in sixth position. Plaintiff said, "I felt I could get on the inside." Plaintiff attempted to bring his horse to the front from an inside position but, as he stated, he found that this was impossible and that he had to move his horse to the outside. Plaintiff testified that if he could have gotten through on the inside he would have won the race.

James Dolbee testified that in his opinion plaintiff was trying to win the race and that plaintiff drove his horse with the same ability in each and all of the races as reflected by the films. This witness pointed out that plaintiff made a decision when he only had "a split second to make that determination." It should be noted here that all four persons, including plaintiff, who testified in plaintiff's behalf rank among the highest in ability among harness drivers in the entire United States.

Darrell Bussee testified that the horse in front of plaintiff "really messed him up* * *"; plaintiff's action in first attempting to go forward on the inside was not unreasonable and that plaintiff did not drive "carelessly or without effort."

Walter Paisley testified that plaintiff's performance in the race was not careless and no lack of effort by plaintiff was shown. In his opinion, plaintiff had to make a choice of getting in past the other horses along the rail or attempting to go around on the outside and plaintiff made this decision in proper time. In his opinion, plaintiff drove "professionally or as a good driver."

■■ It is legally correct that findings of fact made by an administrative body are "prima facie true and correct." (Ill. Rev. Stat. 1975, ch. 110, par. 274.) However, it is the duty of this court, as a reviewing court, to ascertain "whether the findings and decisions of the administrative agency are against the manifest weight of the evidence." (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) Our study of the record convinces us that the result reached by the Board is contrary to the manifest weight of the evidence so that we are "compelled to set aside" the ruling. (*Middleton v. License Appeal Com.* (1974), 20 Ill. App. 3d 534, 536, 314 N.E.2d 596.) the result reached by the trial court is most strongly supported by the evidence and it is accordingly affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.