113 Ill.2d 173 (1986)
497 N.E.2d 984
THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Appellant,
v.
THE STATE BOARD OF EDUCATION et al., (Robert Kimbrough et al., Appellees).
No. 62262.
Supreme Court of Illinois.
Opinion filed June 6, 1986.
Rehearing denied September 26, 1986.
*174 *175 *176 Patricia J. Whitten, William J. Quinlan and Mary Denise Cahill, of Chicago (Robert A. Wolf, of counsel), for appellant.
Neil F. Hartigan, Attorney General, of Springfield (Julia Quinn Dempsey and Susan Frederick Rhodes, Special Assistant Attorneys General, of Chicago, of counsel) for appellee Illinois State Board of Education.
Lawrence A. Poltrock and Mildred F. Haggerty, of Chicago (DeJong, Poltrock & Giampietro, of counsel), for appellee Robert Kimbrough.
Reversed and remanded.
JUSTICE RYAN delivered the opinion of the court:
The board of education of the city of Chicago sought *177 the dismissal for cause of Robert J. Kimbrough (Kimbrough), a tenured teacher, pursuant to section 34-85 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 34-85). A hearing officer held that the board failed to sustain its original charge against Kimbrough by clear and convincing evidence and thus he was entitled to back pay and benefits from the date of his original suspension to the date an amended charge was filed against him. However, the hearing officer held that the board had sustained its amended charge against Kimbrough and thus he was to be dismissed. The difference between the original and the amended charges is explained below. On judicial review, the circuit court of Cook County held that while the hearing officer had erred in applying the clear and convincing evidence standard of proof rather than the preponderance of the evidence standard of proof, the error was harmless since under either standard the hearing officer's decision as to the specifications of the original charge was not against the manifest weight of the evidence. It also held that the hearing officer had erred in consolidating the original specifications and the additional specifications of the amended charge for hearing. The court thus remanded certain specifications of the amended charge for appointment of a hearing officer and a proceeding thereon as provided in the statute.
The appellate court affirmed the dismissal of the original specifications. The court held that the hearing officer was correct in applying the clear and convincing standard and not the preponderance of the evidence standard. (134 Ill. App.3d 612, 615.) It also concluded that the trial court's determination as to the additional specifications in the amended charge was not final and appealable since it had been remanded for further proceedings and thus did not address questions raised by the board as to those specifications. (134 Ill. App.3d 612, 616.) We granted the board's petition for leave to *178 appeal (94 Ill.2d R. 315).
Kimbrough was employed by the board as a physical education teacher in 1959 and served as a tenured teacher during the period pertinent to this appeal. On September 10, 1979, Mrs. Janie Evans, then president of the P.T.A., went to the office of the principal at the school where Kimbrough taught and told the principal that Kimbrough had offered her son, Anthony Evans, who was a student at that school, $500 to kill the principal and two assistant principals. The next day Anthony Evans told the principal and a youth officer from the Chicago police department that Kimbrough had offered him $500 on several occasions to secure a gun and to "knock off" the principal and the two assistant principals "because they were blocking him from advancing in the system." Kimbrough was arrested on September 12, 1979, and was charged by indictment with three counts of solicitation to commit murder. Significant press coverage surrounded Kimbrough's arrest, and scholastic activities at the school were disrupted by the appearance at the school of reporters from the local television and radio stations and newspapers.
On October 17, 1979, the board adopted a report submitted by the general superintendent of schools charging Kimbrough with conduct unbecoming a teacher. The charge contained two specifications:
"1. Robert J. Kimbrough, on more than one occasion, offered a student * * * money to secure a gun and shoot two assistant principals and the principal * * *.
2. The conduct of Robert J. Kimbrough is deemed irremediable."
Kimbrough was suspended pending hearing on the charge. Subsequently, the parties agreed to postpone the dismissal hearing until Kimbrough's criminal indictment for solicitation was resolved. On December 23, 1980, prior to Kimbrough's trial, he was again arrested and *179 charged by indictment with solicitation to commit another murder. He was alleged to have solicited a former student, Andre Rolland, to kill Anthony Evans (the principal witness in the prior solicitation charge). At Kimbrough's request both indictments were tried together in the circuit court of Cook County in March 1982. He was found not guilty by the court as to all charges.
On June 2, 1982, the hearing officer, Julius Rezler, was appointed to hear the dismissal proceeding. Six hearings were conducted. At the first hearing the board requested and was granted a continuance to review the transcripts of the criminal trial and to consider a request by Kimbrough for reinstatement. Based on information contained in the transcripts, the board, on October 13, 1982, adopted an amended report submitted by the general superintendent of schools. The amended report again charged Kimbrough with conduct unbecoming a teacher, but changed the specifications. The amended specifications read as follows:
"1. Robert J. Kimbrough, on more than one occasion, offered solicited a student * * * money to secure a gun and shoot two assistant principals and the principal * * *.
2. That on or about July 11, 1979, Robert J. Kimbrough witnessed a sale of cocaine and failed to report said transaction to the proper authorities.
3. That on or about September of 1980, Robert J. Kimbrough did solicit one Andre Roland [sic] to commit a crime.
24. The conduct of Robert J. Kimbrough is deemed irremediable." (The underscored portion was added; the struck-through portion was deleted.)
The hearing officer ruled that the specifications of the original charge and specifications 2 and 3 in the amended charge constituted two separate sets of charges. However, stating that he realized that this ruling would cause considerable delay in resolving Kimbrough's employment status, the hearing officer stated *180 that hearings on the two separate sets of charges would be conducted simultaneously and that evidence with regard to both sets of charges would be accepted. He explained that at the conclusion of the testimony he would consider first the original charge in view of evidence originating before October 17, 1979, the date the original charge was adopted by the board. If he sustained Kimbrough's dismissal on the basis of the original charge, he would not consider the amended charge and specifications. However, if the original charge was not sustained, he would proceed to specifications 2 and 3 in the amended charge. Should they be sustained, Kimbrough's suspension and dismissal would be effective October 13, 1982, the date the board adopted the amended charge.
The evidence as to the specifications of the original charge consisted primarily of the testimony of Anthony Evans, Kimbrough, and Andre Rolland. However, there was also testimony by the principal, one assistant principal, two assistant superintendents of personnel employed by the board, Kimbrough's wife, and two members of the P.T.A. Mrs. Evans did not testify at the dismissal hearings, although she had testified at Kimbrough's criminal trial.
Anthony Evans testified that Kimbrough offered him money in June 1979 to kill the three administrators, that Kimbrough met with him several times over the summer at various locations to discuss arrangements for the murders, and that during June, Kimbrough drove him (Evans) in his car and pointed out the homes of the administrators. He also testified that Kimbrough showed him a gun he could use and later asked him to obtain a silencer for it, and that in September he related Kimbrough's solicitation to the principal and the police.
Kimbrough, in defense, testified that he loaned Mrs. Evans $500 in June 1979. In July, he went to the Evans' home and asked Mrs. Evans to repay the loan, but she *181 refused. Kimbrough stated that while at the home he observed Mrs. Evans sell drugs to an unidentified man. Kimbrough testified that he told Mrs. Evans' boyfriend, a Chicago police officer, and the boyfriend's mother about the alleged drug sale. He said he also accused Mrs. Evans of selling and using cocaine during a P.T.A. meeting on the evening of September 10, 1979. He said that he did not, however, report the alleged drug sale directly to the police.
Andre Rolland testified as follows. He saw Kimbrough by chance on November 3, 1980. Kimbrough asked Rolland if he wanted to earn some extra money. They met the next day and Kimbrough offered Rolland money to "hurt" Anthony Evans so that Evans could not show up in court. Kimbrough later offered Rolland an increased amount of money to kill Evans instead. Kimbrough gave Rolland money to buy a gun and promised him $500 as a downpayment. On December 23, 1980, Kimbrough gave Rolland $500 and a few hours later Kimbrough was arrested and charged with solicitation to commit murder. Asked whether he had a discussion about drugs with Kimbrough at any time between November and December 1980, Rolland stated he had not.
Based on Rolland's testimony that he did not see Kimbrough until November 3, 1980, the hearing officer stated that he believed that specification 3 in the board's amended charge was defective because it provided that Kimbrough solicited Rolland to commit a crime "on or about September of 1980." The hearing officer stated that the board could either drop specification 3 or adopt a resolution amending the specification. On December 1, 1982, the board adopted an amended report which was identical to the amended report of October 13, 1982, except that specification 3 was changed to provide: "That on or about November 3, 1980, Robert J. Kimbrough did *182 solicit one Andre Roland [sic] to commit a crime."
Kimbrough, in defense, testified as follows. He saw Andre Rolland during the week of September 9, 1980, for the first time since 1972 or 1973. Rolland mentioned at the time that he knew some people who were familiar with Mrs. Evans' drug dealings. Kimbrough indicated that he wanted to solicit the names of those people and turn their names over to his attorney to verify that Mrs. Evans sold drugs. Rolland, however, did not think that the witnesses would be willing to appear in court. Subsequent to that meeting, Rolland called Kimbrough and asked him to buy drugs from Mrs. Evans. Kimbrough made arrangements prior to Christmas to give Rolland $500 to purchase the drugs. Kimbrough testified that the plan was that he would then turn the drugs over to the police. He also testified, though, that the plan was that Rolland would turn the drugs over to the police. Thereafter, on December 23, 1980, Kimbrough met Rolland, who said he had made arrangements to pick up a large quantity of drugs from Mrs. Evans. Kimbrough gave Rolland $500 and was arrested a short time later. Asked whether he had solicited Rolland to commit a crime, Kimbrough stated he had not.
The hearing officer dismissed the specifications of the board's original charge and stated that Kimbrough was entitled to back pay and benefits from October 17, 1979, when he was first suspended by the board until October 13, 1982, when the board adopted the amended charge and specifications. He sustained Kimbrough's dismissal based on specifications 2 and 3 of the board's amended charge of October 13, 1982, ruling that the conduct stated therein was clearly irremediable.
The board filed a complaint for administrative review in the circuit court of Cook County challenging the hearing officer's dismissal of its original specifications and his award of back pay and benefits. Kimbrough also filed *183 a complaint for administrative review challenging the hearing officer's decision sustaining his dismissal based on specifications 2 and 3 of the board's amended charge. The two complaints were later consolidated in the circuit court of Cook County.
The circuit court held that although the hearing officer had erred in applying the clear and convincing evidence standard of proof, his decision as to the specifications of the board's original charge was correct. Since under the evidence the result would be the same regardless of the standard applied as to that holding, it made a finding under Supreme Court Rule 304 (87 Ill.2d R. 304(a)) that there was no reason to delay enforcement or appeal. It also held that the hearing officer erred in consolidating the specifications of the original charge with those of the amended charge for hearing and thus reversed and remanded specifications 2 and 3 of the amended charge for appointment of a hearing officer and further proceedings.
The appellate court affirmed the hearing officer's dismissal of the specifications of the board's original charge, stating that he had correctly applied the clear and convincing evidence standard of proof. It also held that remand by the trial court of specifications 2 and 3 of the board's amended charge meant that that portion of the judgment was not final and appealable. As noted above, we granted the board's petition for leave to appeal (94 Ill.2d R. 315).
The board contends that the hearing officer erred in applying the clear and convincing evidence standard of proof and that the standard that should be applied in all teacher-dismissal proceedings is the preponderance of the evidence standard. It also contends that if we find the appellate court was incorrect in stating that the clear and convincing evidence standard applied, the cause should be remanded to the hearing officer. Before *184 addressing these contentions, we review the propriety of the board's amendment of its original charge and specifications.
The dismissal for cause of tenured teachers employed by the board is governed by section 34-85 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 34-85). However, section 34-85 neither authorizes the board to amend written charges and specifications once they have been adopted nor prohibits the board from doing so. Similarly, the uniform standards and rules of procedure promulgated by the Illinois State Board of Education pursuant to section 34-85 do not provide for amendment of charges and specifications. (23 Ill. Admin. Code 52.) However, section 2-616 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2-616), formerly section 46 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 46), which applies to all proceedings under the Administrative Review Law, does provide for amendments.
As to this case, we hold that the board's amended charge and specifications of October 13, 1982, should not have been heard by the same hearing officer that heard the board's original charge and specifications. Section 34-85 of the School Code provides detailed procedures for the protection of a tenured teacher faced with dismissal for cause. The board must first approve a motion containing written charges and specifications. A request is then to be made to the State Board of Education to schedule a hearing on the charges before an impartial hearing officer and to appoint a hearing officer. A written copy of the motion is to be served on the teacher not more than 10 days after it is adopted. The school board is to forward a copy of the motion and request to the State Board of Education within 30 days from the date the motion is adopted. Within 10 days of receiving the motion and request, the State Board of Education is to *185 provide the teacher and board with a list of five prospective, impartial hearing officers. The board and teacher, within 10 days from receipt of the list, are to alternatively strike one name from the list until only one name is remaining. The teacher has the right to proceed first with the striking. Thus, under section 34-85 a tenured teacher has a right to participate in the selection of the hearing officer as to each charge brought against him or her and within the time frame specified in the statute.
Numerous considerations go into a party's decision as to which names of the five prospective, impartial hearing officers to strike. From a teacher's standpoint those considerations are likely to include, for example, the professional qualifications and prior decisions of the hearing officers, taken in conjunction with the nature of the charge and specifications. Here, the hearing officer was appointed on June 2, 1982. However, the board did not adopt the additional specifications of the amended charge until October 13, 1982. Therefore, Kimbrough would not have been able to consider the nature of the additional specifications when selecting the original hearing officer. Since the hearing officer had been selected before specifications 2 and 3 of the board's amended charge were voted against Kimbrough, they should not have been added to the original specifications and should not have been heard by the same hearing officer without further participation by Kimbrough.
We next consider whether the hearing officer applied the correct standard of proof. The hearing officer stated in his written decision that the activities described in specification 1 of the original charge and specifications 2 and 3 of the amended charge constituted felonious conduct and therefore he would base "his decision with regard to the guilt or innocence of [Kimbrough] on the presence or absence of clear and convincing evidence." On judicial review, the trial court found that while the *186 hearing officer had misstated the standard of proof, the error was harmless because under either the preponderance of the evidence standard or the clear and convincing evidence standard the hearing officer's decision as to specification 1 of the original charge was not against the manifest weight of the evidence. The appellate court, citing Drezner v. Civil Service Com. (1947), 398 Ill. 219, held that the hearing officer was correct in the standard of proof that he chose (clear and convincing). 134 Ill. App.3d 612, 614.
The board maintains that Drezner v. Civil Service Com. (1947), 398 Ill. 219, should be interpreted as requiring application of the preponderance of the evidence standard in causes such as this. It maintains that no court subsequent to Drezner, other than the appellate court below, has required clear and convincing evidence in teacher-dismissal proceedings where conduct which might also constitute a crime is charged. It suggests that the logical extension of the appellate court's opinion is that it will be more difficult to dismiss a teacher who physically assaults or sexually abuses students, or as here hires a student to kill school administrators, than to dismiss a teacher for failing to submit proper lesson plans. It also states that under the appellate court's decision, which seems to require one standard for conduct which is criminal in nature and another standard for conduct which is not, a school board will be required to guess what its standard of proof will be at various dismissal proceedings.
Although Kimbrough "conceded" in the circuit court "that the [h]earing [o]fficer incorrectly stated the standard of proof required in this case as clear and convincing evidence," he now contends that the appellate court correctly interpreted Drezner as requiring application of the clear and convincing evidence standard. He maintains that more than a mere preponderance should be required *187 to deprive a person of a career or profession and stigmatize that individual as much as a criminal conviction would.
"Prior to 1939, Illinois courts adhered to the rule that in civil cases where certain criminal conduct was alleged such conduct had to be proved beyond a reasonable doubt." (Board of Education v. Adelman (1981), 97 Ill. App.3d 530, 531. See Rost v. Noble & Co. (1925), 316 Ill. 357, and cases cited therein.) This "reasonable doubt" rule was later limited to felonies in Rost v. Noble & Co. (1925), 316 Ill. 357, 373, and then abandoned in favor of the preponderance of the evidence standard in Sundquist v. Hardware Mutual Fire Insurance Co. (1939), 371 Ill. 360, 363-65. In Drezner v. Civil Service Com. (1947), 398 Ill. 219, a field investigator for the Liquor Control Commission was discharged from his civil service position on the ground that he solicited and attempted to obtain a bribe from a tavern owner. The State Civil Service Commission approved the discharge, and the trial court, on judicial review, affirmed. On direct appeal, this court stated:
"Both parties herein agree that the charges in cases of this kind need be proved by only a preponderance of the evidence and need not be proved beyond a reasonable doubt. Sundquist v. Hardware Mutual Fire Ins. Co. 371 Ill. 360.
It should be further borne in mind that while the proceedings in this particular cause are civil proceedings, conduct constituting a crime is charged. While we adopt and hold that the charge need only be proved by a preponderance of the evidence, in accordance with the rule heretofore enunciated, we believe that the evidence of guilt should be clear and convincing. In disbarment proceedings, we have often held that where conduct constituting a crime is charged as grounds for disbarment, the evidence to support such charge must be clear and convincing even though the rules of evidence applicable in *188 criminal cases do not prevail. In re Malmin, 364 Ill. 164; People ex rel. Chicago Bar Ass'n, v. Lotterman, 353 Ill. 399; People ex rel. Cline v. Kerker, 315 Ill. 572.
* * *
* * * Where a crime is charged in a civil proceeding, the evidence proving such a crime should be clear and convincing. This is not the case here." (Drezner v. Civil Service Com. (1947), 398 Ill. 219, 227, 230-31.)
The cause was reversed.
Admittedly, Drezner is not clear as to what the applicable standard of proof is in civil cases such as this, where conduct that might also constitute a violation of the criminal law is charged. One example of the confusion resulting from Drezner can be seen in cases involving the dismissal of tenured teachers where conduct that might also constitute a crime is charged. While the appellate court in the case at bar, in reliance on Drezner, applied the clear and convincing standard (134 Ill. App.3d 612, 614-15), other cases decided subsequent to Drezner have applied the preponderance standard (Chicago Board of Education v. Payne (1981), 102 Ill. App.3d 741; Board of Education v. Adelman (1981), 97 Ill. App.3d 530). (See also Lombardo v. Board of Education (1968), 100 Ill. App.2d 108 (declining to adopt a "strong and convincing evidence" standard of proof).) Confusion is also evident in cases involving other public agencies, such as racing, fire, and police boards, where conduct that would also constitute a crime is charged. Some cases have applied the preponderance standard (Feliciano v. Illinois Racing Board (1982), 110 Ill. App.3d 997; McCoy v. Board of Fire & Police Commissioners (1977), 54 Ill. App.3d 276; Ritenour v. Police Board (1977), 53 Ill. App.3d 877), while others have applied the clear and convincing standard (Savaglio v. Board of Fire & Police Commissioners (1984), 125 Ill. App.3d 391; Shallow v. Police Board (1981), 95 Ill. App.3d 901; *189 Wilkey v. Illinois Racing Board (1978), 65 Ill. App.3d 534).
The proper standard of proof applicable to tenured-teacher dismissal proceedings, including those where conduct that might constitute a crime is charged, is the preponderance of the evidence standard. A uniform standard of proof in all tenured-teacher dismissal proceedings will enable the parties and the hearing officer to know with certainty what standard will be applied in various dismissal proceedings and will provide for ease of application. This is not to say that this standard is applicable in all administrative hearings. As noted below, in certain proceedings the private interests involved may be such as to require a different standard of proof.
Citing Santosky v. Kramer (1982), 455 U.S. 745, 71 L.Ed.2d 599, 102 S.Ct. 1388, Addington v. Texas (1979), 441 U.S. 418, 60 L.Ed.2d 323, 99 S.Ct. 1804, and Board of Regents v. Roth (1972), 408 U.S. 564, 33 L.Ed.2d 548, 92 S.Ct. 2701, however, Kimbrough maintains that due process requires that the clear and convincing evidence standard of proof be used in tenured-teacher dismissal proceedings in which conduct that might also constitute a crime is charged. We disagree.
In addressing Kimbrough's claim that due process requires the use of the clear and convincing standard, as stated by the Supreme Court, two questions must be asked. First, Is process constitutionally due? Second, if so, What process is due? (Santosky v. Kramer (1982), 455 U.S. 745, 753, 71 L.Ed.2d 599, 606, 102 S.Ct. 1388, 1394.) The first question  Is process constitutionally due?  has been answered by the Supreme Court in Slochower v. Board of Education (1956), 350 U.S. 551, 559, 100 L.Ed. 692, 701, 76 S.Ct. 637, 641, where it was held that the summary dismissal of a tenured professor at a public college, without notice of reasons and a hearing, violated due process of law.
*190 Here, Kimbrough was given notice of reasons for his dismissal and a hearing on those reasons. Other procedural safeguards existed as well. Section 34-85 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 34-85), which governs the dismissal of a tenured teacher employed by the board, provides that (1) the teacher may not be dismissed except for cause, (2) the teacher must be served with a motion containing written charges and specifications, (3) a hearing on those charges, unless waived by the teacher, will be conducted before an impartial hearing officer, (4) the hearing shall be made public at the request of either the teacher or the board, (5) the teacher may appear at the proceeding with counsel, (6) the teacher may cross-examine witnesses, (7) the teacher may offer evidence and witnesses and present defenses to the charges, (8) the hearing officer may, at the request of the teacher, issue subpoenas requiring the attendance of witnesses, (9) all testimony at the hearing will be taken under oath, and (10) a record will be kept of all testimony at the proceedings.
The second question  What process is due?  is more difficult. It is in this context that the issue of the appropriate standard of proof arises. We must decide whether the preponderance standard is constitutionally sufficient; not whether the clear and convincing standard may simply be more attractive.
"[T]he degree of proof required in a particular type of proceeding `is the kind of question which has traditionally been left to the judiciary to resolve.'" (Santosky v. Kramer (1982), 455 U.S. 745, 755-56, 71 L.Ed.2d 599, 608, 102 S.Ct. 1388, 1396, quoting Woodby v. Immigration & Naturalization Service (1966), 385 U.S. 276, 284, 17 L.Ed.2d 362, 368, 87 S.Ct. 483, 487.) In determining what standard of proof should apply in tenured-teacher dismissal proceedings such as this, we are guided by the Supreme Court's instruction to balance *191 "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." Santosky v. Kramer (1982), 455 U.S. 745, 754, 71 L.Ed.2d 599, 607, 102 S.Ct. 1388, 1395, citing Mathews v. Eldridge (1976), 424 U.S. 319, 335, 47 L.Ed.2d 18, 33, 96 S.Ct. 893, 903.
Generally speaking, the preponderance standard is applied in "the typical civil case involving a monetary dispute between private parties." (Addington v. Texas (1979), 441 U.S. 418, 423, 60 L.Ed.2d 323, 329, 99 S.Ct. 1804, 1808.) In such cases society has a minimal concern with the outcome. Under this standard the litigants are said to "share the risk of error" that may be made by the trier of fact "in roughly equal fashion." (441 U.S. 418, 423, 60 L.Ed.2d 323, 329, 99 S.Ct. 1804, 1808.) The clear and convincing standard is applied in civil cases as well, though less commonly. It has been applied by some jurisdictions "in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing" to "reduce the risk to the defendant of having his reputation tarnished erroneously." (441 U.S. 418, 424, 60 L.Ed.2d 323, 330, 99 S.Ct. 1804, 1808.) Here again, however, in determining whether to reduce the risk of error by applying the higher standard, the governmental or public interest must be balanced against the private interests sought to be protected. It has been applied by the Supreme Court "to protect particularly important interests in various civil cases." (441 U.S. 418, 424, 60 L.Ed.2d 323, 330, 99 S.Ct. 1804, 1808.) See for example: Santosky v. Kramer (1982), 455 U.S. 745, 71 L.Ed.2d 599, 102 S.Ct. 1388 (termination of parental rights); Addington v. Texas (1979), 441 U.S. 418, 60 L.Ed.2d 323, 99 S.Ct. 1804 (involuntary civil commitment); Woodby v. Immigration & Naturalization Service (1966), 385 U.S. 276, 17 L.Ed.2d 362, 87 S.Ct. 482 (deportation); *192 Chaunt v. United States (1960), 364 U.S. 350, 5 L.Ed.2d 120, 81 S.Ct. 147 (denaturalization); Schneiderman v. United States (1943), 320 U.S. 118, 87 L.Ed. 1796, 63 S.Ct. 1333 (denaturalization).
The first balancing factor  the private interest affected  requires inquiry into both the nature of the private interest threatened and the permanency of the threatened loss. (Santosky v. Kramer (1982), 455 U.S. 745, 758, 71 L.Ed.2d 599, 610, 102 S.Ct. 1388, 1397.) Teachers clearly have a monetary or economic interest in their teaching position, for upon dismissal they will no longer be paid. This monetary interest is shared by teachers dismissed for noncriminal conduct, such as incompetency, as well as by teachers dismissed for conduct that might also constitute a violation of the criminal law. As previously mentioned, however, monetary interests are deemed to be adequately protected by the preponderance standard.
Teachers also have an interest in teaching as a profession or occupation. (See Board of Regents v. Roth (1972), 408 U.S. 564, 572, 33 L.Ed.2d 548, 558, 92 S.Ct. 2701, 2707.) As with the monetary interest, this occupational interest is shared by teachers dismissed for noncriminal conduct as well as those dismissed for conduct that would also constitute a crime. Yet, the dismissal of a teacher does not, in and of itself, permanently prevent him or her from teaching. A teacher dismissed by a school district retains his or her teaching certificate and thus may again be hired as a teacher. While a teaching certificate may be suspended or revoked upon evidence of certain proscribed conduct (Ill. Rev. Stat. 1981, ch. 122, par. 21-23), a separate hearing is provided the teacher for that purpose apart from that accompanying the teacher's dismissal. (See also Ill. Rev. Stat. 1981, ch. 122, par. 21-23a (providing for revocation of teaching certificate upon conviction of a sex or *193 narcotics offense).) Thus, the loss threatened to the private interests involved in a teacher dismissal proceeding is not permanent in nature.
This last factor distinguishes teacher-dismissal proceedings from attorney-disciplinary proceedings. The latter may result in the ultimate punishment of an attorney  disbarment. Thus, the standard of proof applicable in attorney disciplinary proceedings is clear and convincing evidence (87 Ill.2d R. 753(c); In re Bossov (1975), 60 Ill.2d 439, 441), whether the misconduct charged amounts to a crime or merely to unprofessional conduct (In re Malmin (1936), 364 Ill. 164, 176; People ex rel. Cline v. Kerker (1925), 315 Ill. 572, 574).
Kimbrough argues that the higher standard should be required when the teacher's dismissal is based on a criminal charge because of the stigma which follows dismissal for such a cause. A teacher dismissed by a school board is stigmatized socially and professionally as a result of the dismissal, independent of whether the discharge was for noncriminal conduct (which Kimbrough does not dispute requires only proof by a preponderance of the evidence) or for conduct that might constitute a violation of the law. Also, stigma often attaches independently of the dismissal proceedings. In the case at bar, the stigma to Kimbrough can be traced, at least initially, to the press coverage that surrounded Kimbrough's arrest in early September 1979, for allegedly soliciting Anthony Evans to kill the school administrators. It did not arise from the original charge and specifications because they were not approved by the board until over one month later. The hearings on the original charge did not begin until almost two years after the publicity surrounding his first arrest and 1 1/2 years after the publicity surrounding his second arrest, and did not begin until after Kimbrough's criminal trial.
Another factor to consider in the balancing process is *194 the countervailing governmental interest supporting use of the challenged procedure. Clearly a school board has a legitimate interest in dismissing those teachers who engage in conduct that would constitute a violation of the law, just as it does teachers who are incompetent. (See Ill. Rev. Stat. 1981, ch. 122, par. 10-22.4.) Thus, it has an interest in protecting its students, faculty, and administrators from harm and in preventing an individual who engages in conduct that would constitute a crime from serving as a role model for students. Ultimately, it is in a school's interest that the standard applied at a teacher-dismissal proceeding be such as to reduce the risk that error by the trier of fact may result in an unfit individual continuing to teach.
We believe that the private interests affected by tenured-teacher dismissal proceedings are not sufficiently analogous to the fundamental interests involved in Santosky v. Kramer (1982), 455 U.S. 745, 71 L.Ed.2d 599, 102 S.Ct. 1388 (termination of parental rights), and Addington v. Texas (1979), 441 U.S. 418, 60 L.Ed.2d 323, 99 S.Ct. 1804 (involuntary civil commitment), or to the interests involved in a disbarment proceeding to require application of the clear and convincing standard. It is appropriate to ask teachers and school boards to share the risk of error (another balancing factor) in dismissal proceedings in a roughly equal fashion when the possible harm to each is roughly equal. Therefore, applying the balancing test, we hold that due process does not require that the clear and convincing evidence standard of proof be applied in tenured-teacher dismissal proceedings in which conduct that might also constitute a crime is charged.
Having found that in proceedings such as this in which conduct constituting a crime is alleged the charge need only be proved by a preponderance of the evidence, we must determine whether it is necessary to remand *195 this cause to the hearing officer. The board, citing Board of Education v. Ingels (1979), 75 Ill. App.3d 334, and Board of Education v. Adelman (1981), 97 Ill. App.3d 530, contends that the cause should be remanded. Kimbrough maintains that Ingels and Adelman are distinguishable and, citing Tanquilut v. Department of Public Aid (1979), 78 Ill. App.3d 55, contends that remand is unwarranted.
In Ingels, the circuit court, on judicial review, held that the hearing officer had erred in requiring the school board to present clear and convincing evidence to support the dismissal of a tenured teacher, rather than proof by a preponderance of the evidence. However, the circuit court held that the evidence presented by the school board had been sufficient to sustain the dismissal under the lesser standard. The appellate court in Ingels, citing Reinhardt v. Board of Education (1975), 61 Ill.2d 101, concluded that because the hearing officer had applied the wrong standard of proof there were no findings in the record subject to review and therefore the circuit court should have remanded the cause to the hearing officer to reconsider his decision in light of the appropriate standard. Board of Education v. Ingels (1979), 75 Ill. App.3d 334, 337.
In Board of Education v. Adelman (1981), 97 Ill. App.3d 530, 533, the appellate court concluded that proof by a preponderance of the evidence was likewise sufficient in tenured-teacher dismissal proceedings involving conduct which might also constitute a criminal offense. Both parties had requested that regardless of which standard of proof was determined to be correct the appellate court apply that standard without remanding. Nonetheless, relying on Ingels, the appellate court remanded the cause.
We do not here hold that in all cases in which a hearing officer applies the wrong standard of proof it is necessary *196 to remand the cause to the administrative body for a further hearing and determination applying the proper standard. In this case Kimbrough urges that there were essentially only two witnesses (Kimbrough and Evans) who testified as to the alleged solicitation by Kimbrough of Evans to commit murder. Since the hearing officer found Evans' testimony not worthy of belief, Kimbrough urges it should make no difference which standard of proof was applied. Kimbrough therefore contends that this court should not remand the case for a further hearing, but that the hearing officer's decision that the specifications of the original charge were not proved should be affirmed.
Under the facts in this case, we are not in a position to make the determination Kimbrough urges. The fact that the hearing officer conducted a hearing as to all specifications at the same time has complicated the issues. The hearing officer at the hearing announced that at its conclusion he would make a determination as to the specifications in the original charge first, and that in doing so he would consider only evidence that had its origin on or before October 17, 1979, the date of the board's adoption of the original charge. Such a ruling would thus preclude consideration of evidence of occurrences after this date regardless of its relevancy.
It has been held that evidence of attempts at intimidation of a witness in a criminal case is properly attributable to a consciousness of guilt and is relevant. (People v. Gambony (1948), 402 Ill. 74, 80; People v. Krone (1981), 98 Ill. App.3d 619, 622; People v. Jones (1980), 82 Ill. App.3d 386, 393.) In our case, at the joint hearing on the specifications, there was evidence of events that occurred after October 17, 1979, and before Kimbrough's criminal trial, which a finder of fact could properly consider as an attempt on behalf of Kimbrough to intimidate Evans, the principal witness against him. Although *197 the hearing officer may have subliminally taken this evidence into consideration, in light of his pronouncement that no post-October 17, 1979, evidence would be considered in deciding whether the board had sustained specification 1 of the original charge, we must conclude that such relevant evidence was at least not properly evaluated and weighed by the hearing officer as to the original specifications against Kimbrough. For this reason it is not just a matter of considering Kimbrough's testimony as against Evans' testimony. To be considered also is this other evidence of a possible consciousness of guilt that was apparently not thrown into the balance when the hearing officer made his determination. For this reason we must remand the matter to the administrative body for another hearing as to the specifications in the original charge.
There are other evidentiary questions that have been raised and urged by the board as further reasons for remanding the cause to the administrative body. Having already determined that the cause must be remanded, and considering that these questions may not arise at another hearing, it is not necessary that we further lengthen this opinion by discussing these additional questions.
For the reasons above stated, the judgment of the appellate court is reversed and the cause is remanded to the administrative body for further hearing in accordance with this opinion.
Reversed and remanded.