BRIAN PELLING, Plaintiff-Appellant, v. ILLINOIS RACING BOARD *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—90—0172

Opinion filed May 21, 1991.

Patrick A. Tuite, Ltd., of Chicago (Patrick A. Tuite and John L. Hines, Jr., of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and John A. Morrissey, Assistant Attorney General, both of Chicago, of counsel), for appellees.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Brian Pelling appeals from the judgment of the circuit court of Cook County, pursuant to administrative review, upholding

the rulings of the Illinois Racing Board (Board). Plaintiff contends that the circuit court erred in the following rulings: (1) that the decision of the Board was not against the manifest weight of the evidence; (2) that the penalty imposed by the Board was not arbitrary, capricious, or otherwise excessive; (3) that plaintiff's due process rights were not violated by the hearing officer's failure to present any findings to the Board; (4) that the Board properly employed a preponderance standard of proof; and (5) that the Board properly imposed a longer suspension upon plaintiff's activities than that recommended by the racing stewards.

Plaintiff was licensed to train, drive, and own race horses in Illinois. On November 6, 1987, he drove Valunga N, a horse he owned and trained, in the tenth race at Maywood Park Harness Racing Track. The race was a trifecta.[1] Plaintiff finished seventh out of nine drivers. Afterwards, the stewards questioned several drivers regarding technical infractions that occurred during the race.

Plaintiff received no inquiry from the stewards concerning his performance on the evening of the race. In fact, plaintiff raced the next day. He was not questioned about the race until November 14, 1987, eight days later, and was not formally charged and suspended until December 17, 1987. During their investigation, the stewards discovered that, on the night of the race, plaintiff and Dennis Nardoni had dinner, and that just before the race, Nardoni had been seen in the paddock, a restricted area. The stewards charged plaintiff with several violations of the Board rules, including that he had conspired to affect the outcome of the race. The stewards suspended plaintiff's license to drive, train, and own horses for the remainder of 1987 and recommended that no future licenses be granted for five years, through the end of 1992.

Plaintiff appealed the steward's ruling to the Board, which conducted a four-day *de novo* hearing before a hearing officer. In the meantime, plaintiff obtained a stay of the steward's ruling from the circuit court until the Board rendered its decision.

At the hearing, the stewards cited three reasons supporting their claim that plaintiff was guilty of a bad drive. First, when the gate flipped, plaintiff allegedly failed to "close the hole" between him and the driver in front. That is, he did not gain ground where the stewards felt that he could and should have done so. Second, just before

---

[1]Trifecta wagering requires picking horses finishing first, second, and third in exact order. The trifecta results for the tenth race were 7, 6, 1, that is, the 7 horse won, the 6 horse placed second, and the 1 horse placed third.

the quarter mile pole on the back stretch for the first time, plaintiff pulled off the rail in front of drivers David Magee and Dale Hiteman, who were approaching plaintiff on the outside. Third, at the third turn, the stewards asserted that plaintiff intentionally drove up on Ron Marsh, whose horse was tiring, so that plaintiff would have to restrain his own horse.

On June 13, 1988, after reviewing the entire record, the Board found plaintiff guilty of violating Illinois Racing Board Rule 18.5 and exonerated him of all other alleged violations. The pertinent portion of Rule 18.5 provides as follows:

> "*Rule 18.5 Unsatisfactory Driving*
>
> Every heat in a race must be contested by every horse in the race and every horse must be driven to the finish. If the judges believe that a horse is being driven, or has been driven with the design to prevent his winning a heat or dash which he was evidently able to win, or is being raced in an inconsistent manner, or to perpetrate or to aid a fraud, they shall consider it a violation and the driver, and anyone in concert with him, to so affect the outcome of the race or races, may be fined, suspended or expelled."

The Board suspended plaintiff's license to drive, train, and own horses through and including 1993 and excluded him from the premises of all racetracks under the jurisdiction of the Illinois Racing Board for the same time period.

Plaintiff filed a complaint for administrative review in the circuit court. On October 6, 1989, after briefs were filed and oral arguments were heard, the circuit court affirmed the Board's order with one qualification. Pursuant to the doctrine of *North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072, it limited plaintiff's suspension to December 1992, as recommended by the stewards. On December 20, 1989, pursuant to the Board's motion to reconsider, the circuit court entered an order *nunc pro tunc* affirming the Board's ruling without exception. This appeal followed.

## I

Plaintiff initially contends that the circuit court erred in holding that the decision of the Board was not against the manifest weight of the evidence.

■ Findings and conclusions of an administrative agency on questions of fact are to be considered *prima facie* true and correct. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110; *Graham v. Illinois Racing Board* (1986), 145 Ill. App. 3d 383, 495 N.E.2d 1013; *Feliciano v. Illi-*

*nois Racing Board* (1982), 110 Ill. App. 3d 997, 443 N.E.2d 261.) Accordingly, a reviewing court is limited to determining whether the findings are contrary to the manifest weight of the evidence. *Graham*, 145 Ill. App. 3d at 389, citing *Strickland v. Department of Registration & Education* (1978), 60 Ill. App. 3d 1, 376 N.E.2d 255.

■ The record in the instant case contains a videotape of the race which was viewed by the Board numerous times. As noted by Commissioner Ray Garrison, "the best evidence is the film itself." Garrison also referred to the Board's expertise in judging racing films. Each Board member was knowledgeable in the area of racing practices and procedures. Ill. Rev. Stat. 1989, ch. 8, par. 37—4.

In addition, the Board considered testimony from the race stewards. Each steward testified to his years of experience in judging thousands of races. Each stated that, in his opinion, plaintiff intentionally drove an unsatisfactory race. Considering the training and knowledge of the Board and its careful study of the videotape and testimony, great deference should be given to its findings.

Plaintiff's reliance on *Viera v. Illinois Racing Board* (1978), 65 Ill. App. 3d 94, 382 N.E.2d 462, is misplaced. In that case, the Board suspended the plaintiff for exercising unreasonable professional judgment in a race; the trial court reversed the Board's ruling, and the appellate court affirmed. In *Viera*, however, there was significantly more evidence in opposition to the Board's finding than in the instant case. For the same reason, *Pletcher v. Illinois Racing Board* (1978), 57 Ill. App. 3d 73, 372 N.E.2d 1075, is also unpersuasive.

Here, the record discloses no basis for reversing the circuit court's conclusion that the findings of the Board were not contrary to the manifest weight of the evidence.

## II

■ Plaintiff next complains that the penalty imposed by the Board was arbitrary, capricious, and otherwise excessive. A reviewing court may overturn an agency's sanctions which are overly harsh in light of mitigating circumstances. (*Edwards v. Illinois Racing Board* (1989), 187 Ill. App. 3d 287, 543 N.E.2d 172; *Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 443 N.E.2d 261.) The test is not whether the reviewing court would have imposed a lesser sanction if it were making the decision in the first instance, but whether, in view of the circumstances, the agency acted unreasonably or arbitrarily. *Edwards*, 187 Ill. App. 3d at 293, citing *Sutton v. Civil Service Comm'n* (1982), 91 Ill. 2d 404, 411, 438 N.E.2d 147; *Graham*, 145 Ill. App. 3d at 389-90; *Feliciano*, 110 Ill. App. 3d at 1005.

■ In the instant case, we find that the Board's imposition of a six-year suspension was not unduly excessive. Plaintiff cites a number of cases in support of his position, none of which are of precedential value, as they are unpublished orders pursuant to Illinois Supreme Court Rule 23. (107 Ill. 2d R. 23.) Also, in *De Silva v. Hartack* (1990), 201 Ill. App. 3d 387, 559 N.E.2d 51, this court affirmed a 30-day suspension for a jockey who violated Illinois Racing Board Rule 234. The violation in *De Silva*, however, cannot be compared to the one at bar, as it did not involve intentional conduct.

Here, defendants correctly point out that plaintiff's lengthy suspension was justified because his conduct was intentional rather than careless and because of the prior violations in his racing record. The record reflects that plaintiff has had prior disciplinary problems and that his license had been suspended in Australia. There is no basis for concluding that the sanction imposed upon plaintiff was arbitrary, capricious, or excessive.

### III

Plaintiff's next contention is that his due process rights were violated when the Board rendered its opinion without benefit of findings of fact made by the hearing officer. He contends that testimony was taken before the hearing officer, but that no findings or recommendations were made, thus leaving the Board to render its opinion on the basis of its reading of the record alone. Defendants argue that plaintiff's assertions are unsupported by law.

■ Where testimony before an administrative agency is preserved for review in the record, specific findings of fact are not necessary for judicial review. (*Mahonie v. Edgar* (1985), 131 Ill. App. 3d 175, 476 N.E.2d 474.) Due process requirements are met if the decision-making board considers the evidence contained in the report of proceedings before the hearing officer and bases its ruling thereon. *Starkey v. Civil Service Comm'n* (1983), 97 Ill. 2d 91, 454 N.E.2d 265.

■ The requirements of due process were met in the instant case. The Board was able to review the transcript of hearing proceedings, the exhibits admitted into evidence, the closing arguments of counsel, and the videotape. Thus, the circuit court did not err in holding that plaintiff's due process rights were not violated by the hearing officer's failure to present specific findings to the Board.

### IV

Plaintiff next argues that the Board should have employed a clear

and convincing standard of proof rather than a preponderance standard. Defendants maintain that the Board properly employed the preponderance standard and that the circuit court was correct in affirming on this ground.

The Illinois Supreme Court held in *Board of Education v. State Board of Education* (1986), 113 Ill. 2d 173, 497 N.E.2d 984, that, in determining what standard of proof should apply in administrative proceedings, a reviewing court must balance the private interest affected by the proceeding, the risk of error created by the chosen procedure, and the countervailing governmental interests supporting the use of the challenged procedure. (*Board of Education v. State Board of Education*, 113 Ill. 2d at 190-91.) The court there held that the preponderance standard was applicable in proceedings to dismiss a tenured teacher.

Plaintiff's argument that a greater standard of proof is required was considered and rejected in *Feliciano v. Illinois Racing Board*. There, the court held that when weighing private interests against governmental interests, the standard of proof should become more stringent as the private interest intensifies. The court there found that although suspension of plaintiff's racing license would result in some economic loss to him, that interest was outweighed by the public interest in preserving the integrity and honesty of the horse racing industry. *Feliciano*, 110 Ill. App. 3d at 1002.

The cogent reasoning of *Feliciano* is directly applicable to the instant case. The State's interest in maintaining the integrity of the racing industry was clearly established and outweighed plaintiff's pecuniary loss. Moreover, the loss of public confidence in the fairness of wagering on horse racing would cause greater harm to a wider variety of interests than the potential loss to plaintiff.

Plaintiff urges application of *Wilkey v. Illinois Racing Board* (1978), 65 Ill. App. 3d 534, 381 N.E.2d 1380, where a clear and convincing standard of proof was applied because the conduct charged, administering drugs to horses prior to their races, constituted a class 4 felony. As noted in *Board of Education of St. Charles Community Unit School District No. 303 v. Adelman* (1981), 97 Ill. App. 3d 530, 423 N.E.2d 254, *Wilkey* appears to stand alone in Illinois as precedent supporting a clear and convincing standard in cases such as this. (97 Ill. App. 3d at 533.) Both *Adelman* and *Feliciano* declined to follow *Wilkey*, and so do we. The circuit court did not err in holding that the Board correctly applied a preponderance standard.

## V

Plaintiff's final contention is that the circuit court erred in holding that the Board properly imposed a lengthier suspension upon plaintiff than that recommended by the stewards. Specifically, plaintiff argues that the longer suspension is barred by the doctrine of *North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072. Defendants contend, and we agree, that *Pearce* is inapplicable to this case.

In *Pearce*, the United States Supreme Court limited the right of the sentencing judge to impose upon a defendant a greater sentence on retrial. The Court explained that this limitation would restrict the judge from penalizing a defendant for exercising his right to a new trial.

■ The instant case, however, does not involve a retrial. " 'The *de novo* hearing is a new adversary proceeding which is neither dependent upon, nor limited by, the proceedings below.' " (*Ray v. Illinois Racing Board* (1983), 113 Ill. App. 3d 510, 515, 447 N.E.2d 886, quoting *Local Liquor Control Comm'n v. Illinois Liquor Control Comm'n* (1978), 59 Ill. App. 3d 1, 5, 374 N.E.2d 1298.) Thus, although the stewards recommended a five-year suspension, the Board was not bound by that recommendation. The circuit court, therefore, properly entered the *nunc pro tunc* order upholding the Board's six-year suspension and holding that *Pearce* was inapplicable.

Plaintiff's reliance on *Blackledge v. Perry* (1974), 417 U.S. 21, 40 L. Ed. 2d 628, 94 S. Ct. 2098, is also misplaced. *Blackledge* involved a defendant who was sentenced for a misdemeanor conviction and appealed. Pursuant to the filing of his notice of appeal, he was entitled to a trial *de novo*, and was charged with a felony. The United States Supreme Court held that one who is convicted of an offense is entitled to a trial *de novo* without fear that the State will substitute a more serious charge for the original one. Because there was no "retrial" here—because the license suspension by the stewards was not a final disciplinary action but only an interim action pending a hearing by the Board—*Blackledge* is inapposite.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.